SHELTON *versus* THE STATE .

Under an indictment charging an assault on the 10th, evidence is admissible of assaults on the 3d and 4th of the same month.

The time of committing an offence, (except where the time enters into the nature of that offence,) may be laid on any day previous to the finding of the bill, during the period within which it may be prosecuted.

It is not error that in the prosecution of offences, assistant counsel is assigned the State.

This was an indictment of two counts, in Dallas Circuit Court, for an assault with intent to kill and murder, and for a common assault and battery. On the first count, the prisoner was acquitted, and on

the second convicted, and fined. Two points were reserved on the trial for the determination of the Supreme Court.

First whether the Court below erred in permiting evidence to go to the jury of assaults on the 3d and 4th of March, when the indictment charged that the offence had been committed on the 10th of March.

Second, whether the Court below erred in allowing assistant counsel to the State, who concluded the argument.

*H G. Perry*, and *Gordon*, for the plaintiff.
*Attorney General, contra.*

WHITE, J.—This was a prosecution at the suit of the State. The indictment contained two counts— one for an assault. with intent to kill and murder, and the other for a common assault and battery. On the first, the defendant was acquitted, but convicted on the second, and fined three hundred & ninety dollars. Points were reserved, under the statute, for the determination of the Court; the first of which is whether it was error for the Judge, on the trial, to permit evidence to go to the jury, of an assault on the 3d or 4th of March, when the indictment charged the offence to have been committed on the 10th of that month. The law requires, that some day should be laid in the indictment, but except where the time is of the description of the offence itself, it is sufficient to lay it on any day previous to the finding of the bill, and during the period within which the offence may be prosecuted. In 1st vol. of *Chitty's* Criminal Law, page 224, of margin, these principles are laid down and sustained by many authorities referred to.

Though the allegation of a specific time is important, it is in no case necessary to prove the precise day, or even year, laid in the indictment, except where time enters into the nature of the offence; and, therefore, an overt act of high treason may be proved to. be committed on a different day from that mentioned in the indictment. To this doctrine, contained in almost all the books, there can be but one conceivable objection, which is this : that if it be allowable to prove the offence after the time laid in the indictment, subsequent prosecutions for the same offence would not be barred. This arises from a belief, that the record of the first conviction or acquital, when relied on as a bar, could not be aided by averment. This, however, is a wrong view of the subject.

On the next page of *Chitty,* to that already referred to, the author says, " That in an indictment for high treason, overt acts, committed at different times, may all be laid on the same day; and, therefore, upon a second indictment, the defendant may, by proper averments, shew that he has already been acquitted of the offence, upon the first, though the two indictments allege the offence to have been committed on different days ; for it would be hard, indeed, if the prosecutor might vary from the day laid, for the purpose of conviction; and the prisoner could not do the same, in order to shew a previous acquittal."

The next point raised, is, whether the Circuit Court erred, in permitting the argument on the trial to be closed by a different attorney, than the solicitor, for the State. It is argued, that such a practice tends to the abuse of prosecutions, by either making them too rigid and severe, on the one hand, or

opening the door to collusion on the other. If this
be so, the State should not be allowed assistant coun-
sel, either to commence or conclude arguments.
Now, the fact is well known, that prisoners usually
employ men of the strongest talents, and the more
important the case, the more distinguished the de-
fending counsel generally are; and if the state is ne-
ver to be aided in her prosecutions, the contest would
often be too unequal for the purposes of justice. Nor
can I conceive that much is to be apprehended from
a practice that has long prevailed throughout our
country. The assisting counsel would be under the
control of the Court, and the solicitor a sworn officer,
charged with the important trust of public prosecu-
tions, would be guilty of a great deriliction of duty,
if he connived at collusions for acquittal, or permitted
cruel and unjust prosecutions.

But it is said, that assisting counsel, on the part of
the State, should not, at all events, be allowed to con-
clude the argument; because, the defending coun-
sel, not apprised of the fact, would not lay out their
strength to meet the emergency. This, generally,
could not be the case; for, in the progress of the
cause, and before any thing was said for the ac-
cused, there would be notice who was to close the
argument. But defendants, if innocent, have
never much to apprehend from the laws, as adminis-
tered in this country, even with the aid of the ablest
counsel for the State, and if guilty; it is no public
grievance that they should be punished. Here, if
any where upon earth, the benign maxim of the law,
that it is better ninety-nine guilty persons should es-
cape, than that one innocent man should be punish-
ed, prevails in all its force. We can not sustain the

last objection. The point with respect to the con-
tinuance, is considered as settled by former adjudica-
tions.

There is, then, no error in the record, and the
judgment must be affirmed. But we can not render
judgment against the security. The law does not
require such a bond as the one taken, nor allow this
Court to give judgment on it. If good at Common
Law, the redress must be sought there.

CRENSHAW, J. not sitting.