JEFFERSONVILLE, MADISON, AND INDIANAPOLIS RAILROAD COMPANY v. BOWEN.

MOTION FOR NEW TRIAL.—*Evidence.*—That "the court erred in admitting evidence to go to the jury over the objection of the defendants," as a reason for a new trial, is too general, in not pointing out the evidence.

BILL OF EXCEPTIONS.—*Evidence.*—*Inspection by Jury.*—A bill of exceptions may contain all the evidence, although it appear that the jury were allowed to inspect the place where the matters referred to in the pleadings occurred. *The Evansville, etc., Railroad Co.* v. *Cochran,* 10 Ind. 560, overruled.

RAILROAD.—*Injury to Child.*—*Negligence of Parent.*—Allowing a child under five years of age to be upon a railroad track unattended, where cars are passing hourly, and where its presence may be undiscovered by the persons in control of trains, is negligence in the parent, which will defeat a recovery by the parent for injury to the child, unless such injury be wilful.

·APPEAL from the Jefferson Circuit Court.

DOWNEY, J.—The appellee sued the appellant, alleging in his complaint that William B. Bowen, five years of age, his son and servant, residing with him, was lawfully upon the railroad track upon a public street in Madison, near the

dwelling-house of the plaintiff, without any fault or negligence of the plaintiff, when, in full sight of the servants of the defendant operating the locomotive and cars of the company, while he was standing near and behind a car that had been carelessly left standing on the track, and when it was known to the servants of the defendant that he was so standing there, and while he was in speaking distance of them, and they could easily have informed him or lifted him out of the way had they so desired, without ringing the bell, blowing the whistle, or giving any signal whatever of their approach, the said servants of defendant wrongfully, carelessly, and negligently backed and run her locomotive and cars against the car so standing on the track, and put the same in motion, and carelessly and negligently ran her cars over said child, by means of which he was so injured that he died; wherefore, etc.

The defendant demurred to the complaint, for the reason that the same did not state facts sufficient to constitute a cause of action, and because the court had no jurisdiction of the parties and subject-matter. The demurrer was overruled by the court, and the defendant reserved the question.

The company then answered in two paragraphs; first, the general denial; and second, that the alleged injury was caused by the negligence and want of care of the plaintiff, because the defendant was operating its cars with due and ordinary care and skill, but the plaintiff negligently permitted his child, under the age of five years, to go and remain upon said railroad track, though he knew that trains were passing over the track every hour of the day; and being so on the track, it was run over and injured, from which injuries it died; and that its servants did not do said injury wilfully, wantonly, or purposely, but, on the contrary, with ordinary care and skill to avoid the same.

The second paragraph of the answer was, on motion of the plaintiff, stricken out, on the ground that it amounted only to a denial of matter already controverted by the gen-

eral denial. The defendant, by bill of exceptions, reserved the question.

After a trial by jury, which ended in a verdict for the plaintiff, the defendant moved the court to grant a new trial, assigning as reasons that the court had erred in admitting objectionable evidence; in its own instructions to the jury; in refusing to give certain instructions asked by the defendant; because the verdict was contrary to law, and not sustained by sufficient evidence.

This motion was overruled, the defendant excepted, and final judgment was rendered for the plaintiff for the amount mentioned in the verdict.

The first alleged error is the overruling of the defendant's demurrer to the complaint. No objection to it is pointed out in the brief of counsel for the appellant, and we can see none.

It was proper to strike out the second paragraph of the answer. It put nothing in issue not already put in issue by the general denial. *Coquillard's Adm'rs* v. *French*, 19 Ind. 274.

The objectionable evidence allowed by the court to go to the jury was not pointed out particularly in the reasons for a new trial. "The court erred in admitting evidence to go to the jury over the objection of the defendant," is the language of the motion. This is too general.

It is urged that the evidence was not sufficient to justify the verdict of the jury.

But we are here met by an objection made by counsel for the appellee, that the bill of exceptions does not contain all the evidence, and that, therefore, we cannot consider this question. The jury were sent to and examined the place where the cars ran over the child, and according to the rule established in *The Evansville, etc., R. R. Co.* v. *Cochran*, 10 Ind. 560, we could not, in such a case, regard the evidence as all in the record, for the reason that we could not know what impressions, as to the facts, were made on the minds of the jury by the examination of the place, etc., in question. It is insisted, however, by counsel for the appellant

The Jeffersonville, Madison, and Indianapolis Railroad Company v. Bowen.

that that case is not founded in reason, or supported by authority, and we are asked to overrule the same. It is urged that to follow that case is to say that in no case where the jury has had a view of the place in which any material fact occurred, as contemplated by the statute, 2 G. & H. 427, sec. 164, of the criminal code, or page 202, sec. 328, of the civil code, can the evidence be got into the record, as it would be impossible to put into the bill of exceptions the impressions made upon the minds of the jury by such view; and that in this way all benefit of appeal to this court, so far as any question is concerned which depends upon all the evidence being in the record, would be wholly cut off. It is further contended that whether the jury shall have a view of the place, etc., is a matter entirely in the discretion of the court, and that the court may thus, in its discretion, deprive a party of the right to have questions depending on the evidence reviewed in this court, even in cases of the greatest moment. It is urged that under the rule in that case a party might be convicted and sentenced to be hanged on wholly insufficient evidence, yet if the prosecutor has got an order for the jury to view the place, and they have done so, it would be impossible to get the judgment reversed, no matter how insufficient the evidence might have been.

These reasons have so much force in them that we feel compelled to overrule the case of *The Evansville, etc., Railroad Company* v. *Cochran*, and any other cases which have followed it, and to hold that the bill of exceptions may contain all the evidence, notwithstanding the jury may have viewed the property which is the subject of the litigation, or the place in which any material fact occurred, in accordance with the sections of the codes above cited. It is suggested by counsel for the appellee that the jurors, after they have examined the property or the place, may be examined and may state the impressions made on their minds, and that their statements on such examination may be put in the bill of exceptions. We are not inclined to adopt this view. We

do not think it practicable. In *Close* v. *Samm*, 27 Iowa, 503, this question was under consideration. The district court had instructed the jury that they should consider all the evidence in the case and all the facts and circumstances disclosed on the trial, including their personal examination, etc. The question was presented to the Supreme Court whether this instruction was correct or not, and, under a statute similar to our section found in the civil code, the court said: "The question then arises as to the purpose and intent of this statute. It seems to us that it was to enable the jury, by the view of the premises or place, to better understand and comprehend the testimony of the witnesses respecting the same, and thereby the more intelligently to apply the testimony to the issues on trial before them, and not to make them silent witnesses in the case, burdened with testimony unknown to both parties, and in respect to which no opportunity for cross examination or correction of error, if any, could be afforded either party. If they are thus permitted to include their personal examination, how could a court ever properly set aside their verdict as being against the evidence, or even refuse to set it aside without knowing the facts ascertained by such personal examination by the jury? It is a general rule, certainly, if not universal, that the jury must base their verdict upon the evidence delivered to them in open court, and they may not take into consideration facts known to them personally, but outside of the evidence produced before them in court. If a party would avail himself of the facts known to a juror, he must have him sworn and examined as other witnesses."

The bill of exceptions, therefore, stating that it contains all the evidence, we must so regard it, notwithstanding it appears that the jury were sent to and viewed the place where the facts occurred.

Without adverting to the evidence of each witness in particular, the evidence developed about the following state of facts: That defendant's road has been constructed and used daily on Ohio street, in said city, for several years; that

Ohio street fronts on the river bank; is a long, straight street; that from the place where the accident occurred to the depot, is half a mile; that defendant's employees at place where the accident occurred could see one-half mile each way along the track; that plaintiff had lived at same place less than a year, on north side of Ohio street, about thirty-six feet from his door to center of the track; there are no houses on south side of Ohio street, but river bank, which at place where accident occurred is a wharf (graded for a wharf), and of course inclines off to the water; that at the time, plaintiff was at work on wharf-boat at the river, which was between Mulberry and West streets; Mulberry and West streets are two streets running from the river north, whilst Ohio street runs east and west along the river bank; Mulberry street is one square east of West street; the child of plaintiff had been in the habit of going to meet his father as he came to his meals, and crossing the railroad, and sometimes was sent to call his father to his meals; in doing so, he would necessarily cross the track of the road in front of his father's house; he had also been in the habit of waiting on or about a pile of plank for his father, and playing thereon; the plank-pile was on the south side of the railroad, about three feet south of the track, not high, probably two or three feet high; on the day of the accident the child was about the plank-pile, alone, as appears; his father was asleep on the wharf-boat; his mother in her house, which was not far west of Mulberry street; one or two cars (empty box cars) had been left on the track the evening or day before, nearly or quite opposite plaintiff's house; these cars had been loaded with corn, and were left there to be unloaded; the train of four or five cars was backing slowly up the track at about three miles per hour, to couple on to the cars standing on the track; the bell was not ringing, but the whistle had been blown at the woollen factory, about two squares below the place of the accident; the train did not make much noise, only such as is usual in a train moving at that rate. It is proved by the fireman and engineer, that in backing up,

The Jeffersonville, Madison, and Indianapolis Railroad Company *v.* Bowen.

the one was looking out at the north and the other at the south side of the engine, looking east, the way the train was backing, to see that everything was clear; it is proved by the brakeman, Terrell, and by others, that shortly before the train came up to the standing cars, he got off the moving train on the north side and walked up on the north side, and rather in front, to couple the cars; that before the moving train came up, he stooped down and looked under the standing cars to see that there were no hogs under them; that he could see through under the train to the east end, and did not see the child, though if it had been standing near the track on the south side, and opposite the south-east wheels, he could not have seen it; that he coupled the cars, and then stepped from between and motioned the engineer to go on (backing up); that then the child's mother ran out of the house and screamed; he motioned the engineer to stop quick; the engine was reversed; the cars moved each way about a length or half length of one car after they were coupled; he ran round the east end of the car and picked up the child, and carried it into the house; both legs were badly crushed, and it was otherwise injured, and died two days afterward; whilst the train was backing up, the conductor and another brakeman stood on top of the train, looking east, and could have seen the child, if on the track, unless close behind the box cars on the track; just as the train came up to the standing cars, a brakeman jumped over on to the standing cars. Sometimes they ring the bell, and sometimes not, along there.

We are of the opinion that the evidence does not make out the case as alleged in the complaint. It is stated in the complaint that the child was lawfully upon the track of the road, without any fault or negligence of the plaintiff. This allegation is untrue, according to the evidence. To allow a child of such tender years to be so exposed to danger is negligence; and such negligence as will prevent a recovery by the parent for an injury to it through the negligence of the company. *The Lafayette, etc., Railroad Company* v. *Huff-*

*man*, 28 Ind. 287; *The Pittsburgh, etc., Railway Company* v. *Vining's Adm'r*, 27 Ind. 513.

It is further stated in the complaint, that the child was in full sight of the servants of the company operating the locomotive, etc. This allegation is not shown by the evidence to be true. It is also stated that the servants of the defendant knew that the child was standing near and behind the cars which had been left on the track. This was not proved, but the contrary, we think. It is stated that the servants of the company were within speaking distance of the child; that they could easily have informed him of the danger, or lifted him out of the way had they so desired. It appears that they did not know that the child was near, and therefore could not, of course, have spoken to him or lifted him out of the way.

It being conceded, as it must be, according to the authorities, that the negligence of the parents contributed to its injury and death, by improperly allowing it to be upon the railroad track, it is well settled that the plaintiff cannot recover for the negligence of the company.

Had it been true, as seems to be alleged in the complaint, that the child was injured or killed purposely or wilfully, there might have been a recovery, notwithstanding the child was exposed to the danger by its own negligence or that of its parents. Such a case is not made out by the evidence. There is little, if any, evidence of negligence on the part of the servants of the defendant, and no evidence of purpose or wilfulness on their part. In our opinion, the court should have granted a new trial.

The judgment is reversed, with costs, and the cause remanded, with instructions to grant a new trial.

*C. E. Walker, T. A. Hendricks, O. B. Hord,* and *A. W. Hendricks,* for appellant.

*J. L. Wilson* and *E. R. Wilson,* for appellee.