Wood v. The State.

Filed Dec. 21, 1883.

———◆———

No. 11,039.

## WOOD v. THE STATE.

CRIMINAL LAW.—*Murder.*—*Indictment.*—An indictment, alleging that the defendant killed one S., by then and there stabbing him, shows that the death of S. resulted from the stabbing by the defendant.

SAME.—*Prosecuting Attorney.*—*Assistance.*—A prosecuting attorney is guilty of no impropriety in asking the court to appoint attorneys to assist him in a prosecution for crime, and the court commits no error in complying with the request.

SAME.—*Special Venire.*—*Jurors.*—The statute, R. S. 1881, section 1388, authorizes the court to issue a special venire for additional jurors, and such may be entitled of the cause in which it issues.

SAME.—*Arraignment.*—*Harmless Error.*—Though the defendant may waive an arraignment, yet the refusal of the court to permit him to do so is a harmless error.

SAME.—*Statute Construed.*—The statute requires the Supreme Court to disregard harmless errors. R. S. 1881, section 1891.

SAME.—*Evidence.*—*Declarations.*—*Res Gestæ.*—Declarations made half an hour before the commission of a homicide are part of the res gestæ only when they are part of a continuous quarrel which resulted in the fatal act.

SAME.—*Threats.*—In a prosecution for homicide, threats by the deceased against the accused are admissible in evidence for the defendant.

SAME.—Upon a trial for homicide, threats made by the deceased against the defendant, communicated to the latter just preceding an encounter begun by the deceased, which ended in his death, and warnings of great danger from the latter given by others at the same time, are proper evidence for the defendant.

WITNESS.—*Evidence.*—*Repetition of.*—*Practice.*—When a witness has stated a fact once, there is no error in refusing to allow a question calling for its repetition.

SAME.—*Cross-Examination.*—*Supreme Court.*—The party producing a witness can not, in the Supreme Court, question the action of the trial court in refusing to allow a question, unless he state the evidence which he expects to elicit. It is otherwise on cross-examination.

SAME.—A cross-examination must, as a general rule, be confined to the matters elicited by the direct examination.

From the Criminal Court of Allen County.

R. S. *Robertson* and J. B. *Harper*, for appellant.

F. T. *Hord*, Attorney General, C. M. *Dawson*, Prosecuting Attorney, H. *Colerick* and W. S. *Oppenheim*, for the State.

ELLIOTT, J.—Appellant was adjudged guilty of manslaughter, and from that judgment prosecutes this appeal.

The indictment charges that, " on the 9th day of March, 1883, at the county of Allen and State of Indiana, Commodore Wood did then and there feloniously, purposely, and with premeditated malice, unlawfully and feloniously kill and murder Charles Shelner, by then and there feloniously, purposely, and with premeditated malice, unlawfully, feloniously, striking, cutting, stabbing and mortally wounding the said Charles Shelner with a knife, which the said Commodore Wood then and there had and held in his hand."

The objection urged against this indictment is that it does not show that Shelner died from the effects of the stabbing inflicted by the appellant. There is no force in this objection. The charge is made in plain terms that the appellant did feloniously kill Charles Shelner, and surely this is a direct averment that death resulted from appellant's wrongful and malicious act. *Veatch* v. *State*, 56 Ind. 584 (26 Am. R. 44); *Meiers* v. *State*, 56 Ind. 336. In the averment is contained the charge that death did result, and that the cause of death was the appellant's act.

A prosecuting attorney may properly ask the court to appoint attorneys to assist him in the prosecution of a man accused of crime, and the court commits no error in granting the request. The law freely accords to the accused the assistance of such counsel as he may desire, and there is no rea-

son why the same privilege should not be accorded to the
State. The attorneys employed in this case were called by
the prosecuting attorney, and we can not say that he did not
act fairly and wisely in asking assistance, nor that the court
abused its discretion in granting his request. Whether the
attorneys can claim pay for their services, or whether the
prosecutor can create any claim against the State or county,
is not here the question. Our investigation does not extend
in that direction, for we are simply to ascertain whether or
not an error was committed which prejudiced the rights of
the appellant. In holding, as we do, that the State may call
counsel to assist in the prosecution, we are sustained by the
very decided weight of authority. *State* v. *Wilson*, 24 Kan.
189 (36 Am. R. 257); *Hopper* v. *Com.*, 6 Grat. 684; *Shelton*
v. *State*, 1 Stew. & P. 208; *United States* v. *Hanway*, 2 Wall.
Jr. 139; *People* v. *Blackwell*, 27 Cal. 65; *State* v. *Bartlett*, 55
Maine, 200; *Edwards* v. *State*, 47 Miss. 581; *State* v. *Russell*,
26 La. An. 68; *Jarnagin* v. *State*, 10 Yerger, 529; *Dukes* v.
*State*, 11 Ind. 557.

The trial court had authority to issue a special venire.
This authority is conferred by statute, and a broad discretion
is vested in the courts. R. S. 1881, section 1388; *Merrick*
v. *State*, 63 Ind. 327.

The record does not show any abuse of discretion in this
case, and we can indulge in no presumptions against the ac-
tion of the trial court; on the contrary, we must presume
that the court did its duty and justly exercised the discre-
tion with which it is vested.

A special venire may be entitled as of the cause in which
it is issued. No material injury can be done by giving the
title of the cause, and where there is no substantial injury
there can be no reversal.

The statute now in force provides that the defendant may
waive an arraignment, and it would have been the proper
course in this case to have allowed the appellant to waive an
arraignment. There was, however, no material error in re-

fusing to allow a formal waiver to be entered. The court did, perhaps, a useless thing in requiring the appellant to be arraigned after he had asked to enter a waiver, but no substantial injury was done him.

Appellant's counsel are in error in asserting that it is not a question whether a defendant is or is not injured by the ruling of the trial court. Our statute expressly requires that we shall not regard technical errors or defects which did not prejudice the substantial rights of the defendant. R. S. 1881, section 1891.

It is true, that declarations made by persons engaged in an altercation, or made by bystanders during the altercation, are admissible in evidence as part of the *res gestœ*. *Baker* v. *Gausin,* 76 Ind. 317. In order to entitle such declarations to admission, it must appear that they were made during the progress of the affray. We think there was no material error in excluding the testimony of Charles Parker as to an expression used by him while stooping over the body of the deceased, Charles Shelner. This conclusion we rest upon the fact that the witness had stated substantially the same matters in answer to other questions, and not upon the proposition that they were not parts of the *res gestœ*. Where the witness's answers furnish substantially the same testimony as that called for by an excluded question, there is no material error in the ruling excluding the question, for no substantial injury is done the party.

Where there is a considerable interval of time, as a half an hour, intervening between the declarations of a witness or a party and the commission of a criminal act, the declarations can not be considered as part of the *res gestœ*. Where, however, the declarations are part of a quarrel which continues as one transaction until it culminates in a homicide, then the declarations made at any time during its progress and connected with it become part of the thing done, and as such competent evidence. Wharton Crim. Ev., section 263; *Jones* v. *State,* 71 Ind. 66.

Threats of the person slain against an accused are admissible in evidence in the latter's favor, for the purpose of showing what was in the mind of the accused when the homicide was committed. *Holler* v. *State,* 37 Ind. 57 (10 Am. R. 74). They are often admissible for the purpose of aiding in determining who was the aggressor. *Campbell* v. *People,* 16 Ill. 18.

In order to avail himself of a ruling denying a right to ask a question, the party by whom the witness is produced must state what he expects to prove. The rule, however, is otherwise on cross-examination. In the latter case the cross-examining party is not required to make such a statement.

The general rule is that the cross-examination must be confined to the subject of the direct examination. This rule sustains the action of the court below in refusing to allow appellant to ask James E. Ballou several questions propounded by counsel.

The appellant's counsel propounded to him while on the witness stand several questions, which the court excluded, but as no statement was made as to what testimony these questions were expected to elicit, we can not say that any error was committed in refusing to allow them to be answered.

Anson Dunton testified that he was in the store of James E. Ballou where Wood and Shelner both were, that he heard Shelner say: "There is the damned cuss; if you say so I will pound him now;" that Shelner was speaking of Wood; that the latter got up to go out; that "Shelner walked out in front of him; Wood stopped by the witness's side; "Shelner stood outside looking in; the witness communicated to Wood what Shelner had said." At this point the appellant's counsel asked the witness, "What, if anything, did you hear Ballou say to him, Wood, about preparing himself, because Shelner would pound him over the head when he went out?" An objection was sustained to this question, and the following offers and rulings were then made, as exhibited by the following extract from the record: "The defendant's

counsel offer to prove by this witness that he heard Ballou. tell the defendant that he had better prepare to defend himself, because Shelner would pound him over the head when he went out." By the court: "You can not prove this." "The defendant's counsel further offer to prove by this witness that he, himself, told Wood that he had better look out for Shelner when he went home." By the court: "You can prove this." "The defendant's counsel further offer to prove by this witness that John P. Shouff, Jr., said to Wood at that time that he had better look out; that he wouldn't be in his, Wood's place, for a thousand dollars to night." By the court: "You can not prove this." The witness, to whom these questions were propounded, further testified that the deceased remained standing, looking in the store; that Wood and several others went out; that as Wood was passing the door Shelner said to him, "I want to speak to you a minute," but that Wood "passed right along," and he and the deceased went along near together for fifteen or sixteen feet; that then Shelner asked Wood whether he said certain things of him, and the former declared that he had; that the latter using an opprobrious epithet, called Wood a liar, and struck him. In our opinion, the court erred in excluding the offered evidence.

In *Fisher* v. *State*, 77 Ind. 42, it was held that it was competent for the State to prove, against the defendant, that some minutes before the altercation a man named Givens said to the defendant: "Take this brick and go down street and see if you can find him, and don't be bluffed off by him," and the principle on which that case stands governs the present. The appellant had a right to show the purpose of the deceased, and had also the right to show what appeared to him to be that purpose. The threat of the deceased made in the store, the waiting outside, the assault on the accused, and the statements made to him so near the moment of the encounter, ought all to have gone to the jury to enable them to judge whether he in good faith believed himself to be in danger of great

bodily harm. The question was not whether the information was true or false, but whether it was such as, conjoined with other circumstances, was likely to create a well grounded apprehension of serious and urgent danger. It is not necessary that a man defending himself shall act upon real and existing facts; it is sufficient if there are appearances creating a well grounded apprehension of danger. The purpose of the deceased in waiting at the door, and in assaulting the accused, was an important element, for with knowledge of that purpose the natural apprehension would be that the assault was intended to carry it into effect. How much influence such evidence should exert is not for the court to determine; that is for the jury. That it would exert some influence entitles it to admission.

We need not decide what would be the rule if the communication had been made to the appellant at a period remote from the homicide. It is sufficient to hold that such a communication made a very brief interval before the affray, and while the deceased was near at hand, was competent as tending to show that the accused believed himself to be in danger of great bodily harm. The belief under which he acted was a question of controlling importance, and evidence tending to show what that belief was, and the grounds upon which it rested, were relevant and material. Communications received a brief time before the encounter would have tended to show what his belief was, and what ground there was for it. This would be so whether the witnesses stated their own views or merely repeated threats uttered by the deceased. Statements made a few minutes before the encounter, and while the deceased was within full sight and hearing, and made in connection with the communication of threats uttered by the deceased a minute or two before, ought to have gone to the jury, whether they were repetitions of the threats of the deceased or the statement of the views of the witnesses.

Other questions are discussed, but we do not deem it necessary to decide them, as they may not arise on another trial.

Judgment reversed.

Clerk will issue the proper order to the warden of the Northern Prison for the return of the prisoner to Allen county.

Filed Dec. 21, 1883.