Shular v. The State.

Filed Feb. 9, 1886.

------◆------

No. 12,606.

## SHULAR v. THE STATE.

CRIMINAL LAW.—*Change of Judge.*—*Application by One Jointly Indicted with Another.*—*Presence of Other Party.*—*Severance.*—Where one of two persons jointly indicted for murder separately applies for a change of judge, an order for such change may be made when the other party is not present, the effect of the application and order being to sever the defences.

| 105 | 289 |
| 129 | 442 |
| 105 | 289 |
| 134 | 180 |
| 105 | 289 |
| 141 | 134 |
| 105 | 289 |
| 144 | 299 |
| 105 | 289 |
| 151 | 317 |
| 152 | 320 |
| 152 | 321 |
| 105 | 289 |
| 154 | 249 |
| 105 | 289 |
| 164 | 269 |
| 105 | 28) |
| 165 | 185 |
| 105 | 289 |
| 171 | 639 |

Shular v. The State.

SAME.—*Separate Trials.—Court may Suggest Propriety of.*—Not only may parties jointly indicted be tried separately upon demand, but the court, when justice requires it, may suggest in express words the propriety of separate trials.

SAME.—*Employment of Counsel to Assist Prosecuting Attorney.—Discretion of Court.*—It is within the discretion of the trial court to direct the employment of counsel to assist the prosecuting attorney in conducting a trial against a person accused of felony.

SAME.—*Statute.*—The defendant in a criminal case, who asks the benefit of the provisions of a statute, must take the benefit just as the statute gives it.

SAME.—*Murder.—Inspection of Place by Jury.—Absence of Accused.—Evidence.*—The court may, without error, upon the request of the defendant in a prosecution for murder, send the jury, unaccompanied by the defendant, to inspect the premises where the homicide was committed, a: such view does not constitute evidence in the case.

SAME.—*Constitutional Law.*—Section 1827, R. S. 1881, providing for a view of the place in which any material fact occurred, "with the consent of all the parties," is constitutional.

SAME.—*Argument of Counsel.—Practice.*—Misconduct of counsel in argument to the jury, to be available for the reversal of the judgment, must be of such a character as to injure the substantial rights of the defendant.

SAME.—*Statements as to Collateral Matters.—Character of Accused.*—A statement of the prosecuting attorney in argument, upon a merely collateral matter, which it is apparent does not injure the defendant, and also a statement, without more, that the character of the accused is shown by his own witnesses, will not justify a reversal.

SAME.—*Impeachment of Witness.—Instruction.*—It is not error to instruct the jury that in passing upon the credibility of a witness they may consider "his impeachment in any case where the witness is found to be successfully impeached."

SAME.—*Misconduct of Jury.—Affidavits.—Supreme Court.—Practice.*—Where misconduct of the jury is assigned as cause for a new trial, and affidavits and counter-affidavits are filed and evidence is heard, but on appeal only the affidavits in support of the motion are in the record, the question will not be considered.

From the Montgomery Circuit Court.

*W. H. Thompson, W. B. Herod* and *J. West,* for appellant.

*A. B. Anderson, F. M. Howard, G. W. Paul, J. E. Humphries* and *W. W. Thornton,* for the State.

ELLIOTT, J.—The appellant was jointly indicted with

James Cunningham for the murder of William Lane. There were separate trials, and the appellant was convicted of manslaughter.

The trial court entertained a motion by Cunningham for a change of judge and made an order for a change at a time when the appellant was not present, and this ruling is assigned for error.

In our judgment the ruling was not erroneous. The statute expressly provides that parties jointly indicted may sever in their defences and may demand separate trials. The application for a change of judge by Cunningham was a declaration that he desired to sever in his defence, and that was a declaration he had a right to make whether the party jointly indicted with him was or was not present. It is not necessary for a party who claims a right to sever to make an explicit declaration of his election; it is sufficient if his acts are such as indicate an election to be separately tried.

One of two defendants jointly indicted has a right to apply for a change of venue, and the effect of granting the order is to sever the defences, leaving the defendant who does not apply for a change to be tried in the court where the indictment was found, and carrying the trial of the other defendant to the court to which the cause was ordered upon his application. *State* v. *Carothers*, 1 Greene, Iowa, 464; *State* v. *Martin*, 2 Iredell, 101; *State* v. *Wetherford*, 25 Mo. 439; *Hunter* v. *People*, 1 Scam. 453; *John* v. *State*, 2 Ala. 290; 1 Bishop Crim. Proced., section 75: Wharton Crim. Pl. and Pr. (8th ed.), sec. 602.

In *Brown* v. *State*, 18 Ohio St. 496, it was held that a change of venue upon the application of one of several defendants was proper, and that it operated as a severance. The court there said: "It seems quite clear to us that a motion by one of two persons jointly indicted, for a change of venue as to him alone, necessarily involves and includes a motion for a separate trial; and that the granting of such

motion necessarily involves and includes the granting of a separate trial also."

As the motion made by Cunningham for a change of judge necessarily involved the declaration of an election to be tried separately, it follows that the appellant was not entitled to demand that he should be present when it was made and acted upon, since that matter concerned his co-defendant alone. Where there is a severance, it is not necessary that all who are jointly indicted should be in court when orders are made that affect one only .of the defendants. It is, indeed, held by respectable courts, that the defendant need not be present when an application for a change of venue is made in his own behalf. *State* v. *Elkins*, 63 Mo. 159; *Hopkins* v. *State*, 10 Lea, 204; *Rothschild* v. *State*, 7 Texas App. 519. This rule is in harmony with the decision in *Epps* v. *State*, 102 Ind. 539, that a defendant need not be present at the hearing of motions, although he must be present on the trial. There are authorities supporting this doctrine, among them, *State* v. *Jefcoat*, 20 S. C. 383; *State* v. *Fahey*, 35 La. Ann. 9; *State* v. *Clark*, 32 La. Ann. 558; *State* v. *Harris*, 34 La. Ann. 118. We need not, however, go further in this instance than to declare that one of two defendants jointly indicted may apply for a change of judge, that the application involves a declaration of a demand for a separate trial, and that the presence of the person jointly indicted with the defendant, at the time the application is made or ruled on, is not required.

It is within the discretion of the trial court to direct the employment of counsel to assist the prosecuting attorney in conducting a trial against a person accused of felony. *Wood* v. *State*, 92 Ind. 269; *Siebert* v. *State*, 95 Ind. 471; *Tull* v. *State, ex rel.*, 99 Ind. 238; *Bradshaw* v. *State*, 17 Neb. 147; *State* v. *Montgomery*, 22 N. W. Rep. 639.

The trial court did the appellant no legal injury in appointing counsel to assist the prosecution, nor was there anything said in announcing its rulings upon that question, which

trenched upon any of the appellant's rights. It is a mistake to suppose that one jointly indicted with another has a right to a joint trial; on the contrary, at common law the prosecution might demand separate trials, and under our statute any defendant may demand that a separate trial be awarded him. The court, when justice requires it, may suggest in express words the propriety of separate trials.

The court, on the motion of the appellant, sent the jury to inspect the premises where the homicide was committed, and did not direct that the defendant should be present when the inspection was made; but no request was made by the defendant that he should be allowed to be present, nor was there even a suggestion to the court that he desired to accompany the jury; nor did he, although he was present when the jury left the court-room, ask that he be permitted to go with them; nor did he object in any manner to their making the inspection. But the record shows more than this, for it shows that the court directed the attention of the defendant and his counsel to the statute, and stated that it required the consent of the parties, and inquired if they consented to the order, to which inquiry, as the record recites, the defendant's counsel responded "by renewing their request, and defendant indicated his assent."

Many authorities are cited by counsel in support of the general principle that the defendant must be present when evidence is given against him, and that this is the general rule we have no doubt; but the question here is whether the case is within the rule, not what the general rule is. Whether the case is within this general rule must depend upon the provisions of our statute and the conduct of the appellant.

Our statute provides that "Whenever, in the opinion of the court and with the consent of all the parties, it is proper for the jury to have a view of the place in which any material fact occurred, it may order them to be conducted in a body, under the charge of an officer, to the place, which shall be shown to them by some person appointed by the court for

that purpose. While the jury are thus absent, no person, other than the officer and the person appointed to show them the place, shall speak to them on any subject connected with the trial."

This statute does not intend that the view of the premises where a crime was committed shall be deemed part of the evidence, but intends that the view may be had for the purpose of enabling the jury to understand and apply the evidence placed before them in the presence of the accused in open court. Deferring, for the present, the consideration of the authorities, and reasoning on principle, we shall have no difficulty in concluding that the statute does not intend that an inspection of a place where a crime was committed shall be taken as evidence. It can not be seriously doubted that evidence can only be delivered to a jury in a criminal case in open court, and, unless there is a judge, or judges, present, there can be no court. The statute does not intend that the judge shall accompany the jury on a tour of inspection; this is so obvious that discussion could not make it more plain. The jury are not, the statute commands, to be spoken to by any one save by the officer and the person appointed by the court, and they are forbidden to talk upon the subject of the trial. It is the duty of the jurors to view the premises, not to receive evidence, and nothing could be done by the defendant, or by his counsel, if they were present, so that their presence could not benefit him in any way, nor their absence prejudice him. The statute expressly provides who shall accompany the jury, and this express provision implies that all others shall be excluded from that right or privilege. It is quite clear from these considerations, that the statute does not intend that the defendant or the judge shall accompany the jury, and it is equally clear that the view obtained by the jury is not to be deemed evidence.

Turning to the authorities we shall find our conclusion well supported. The statute of Kansas is substantially the same as ours, except that it does not, as ours does, require the

consent of all of the parties, and in a strongly reasoned case it was held that it was not error to send the jury, unaccompanied by the defendant, to view the premises where a burglary had been committed. BREWER, J., by whom the opinion of the court was prepared, said, in speaking of the statute: " Nothing is said in it about the presence of the defendant, the attorneys, the officers of the court, or the judge. On the contrary, the language seems to imply that only the jury and officer in charge are to be present. The trial is not temporarily transferred from the court-house to the place of view. They are 'to be conducted in a body' ' while thus absent.' This means that the place of trial is unchanged, and that the jury, and the jury only, are temporarily removed therefrom. Just as when the case is finally submitted to the jury, and they ' retire for deliberation,' there is simply a temporary removal of the jury. The place of trial is unchanged. And whether the jury retire to the next room, or are taken to a building many blocks away, the effect is the same. In contemplation of law the place of trial is not changed. The judge, the clerk, the officers, the records, the parties, and all that go to make up the organization of the court remain in the court room." *State* v. *Adams,* 20 Kan. 311.

The keenest scrutiny will disclose no infirmity in this reasoning, and it is in close agreement with that of our own court. In *Jeffersonville, etc., R. R. Co.* v. *Bowen,* 40 Ind. 545, this court overruled the case of *Evansville, etc., R. R. Co.* v. *Cochran,* 10 Ind. 560, and adopted the views of the Supreme Court of Iowa, expressed in *Close* v. *Samm,* 27 Iowa, 503. That court, in speaking of a statute similar to ours, said: " It seems to us that it was to enable the jury, by the view of the premises or place, to better understand and comprehend the testimony of the witnesses respecting the same, and thereby the more intelligently to apply the testimony to the issues on trial before them, and not to make them silent witnesses in the case, burdened with testimony unknown to both parties, and in respect to which no oppor-

tunity for cross-examination or correction of error, if any, could be afforded either party." The doctrine of *Close* v. *Samm*, *supra*, was again expressly approved in *Heady* v. *Vevay*, etc., *T. P. Co.*, 52 Ind. 117, and it was said: "It results that the impression made upon the minds of the jurors does not constitute a part of the evidence in the cause." The case of *Jeffersonville*, etc., *R. R. Co.* v. *Bowen*, *supra*, was approved in *Gagg* v. *Vetter*, 41 Ind. 228 (13 Am. R. 322), and in *City of Indianapolis* v. *Scott*, 72 Ind. 196. In the case last cited it was said: "Perhaps, strictly speaking, the jury had no right to do anything more than to view the premises, thereby to enable them the better to apply the evidence given upon the trial."

Counsel refer us to *Carroll* v. *State*, 5 Neb. 1, where a different view is taken, but we can not yield assent to that decision. It is not a carefully considered case; not a single authority is cited, and there is no reasoning in support of the conclusion reached. The court there quote the statute and say: "This should be done in the presence of the prisoner, unless he decline the privilege, as he is entitled to have all the evidence received by the jury taken in his presence." Nothing more is said upon the subject, and the entire question is thus summarily disposed of. If our decisions are correct in holding that the view of the premises taken by the jury does not constitute evidence, that of the learned court from whose decision we have quoted must be wrong. In our investigation we have found two other cases which deserve a brief notice. In *State* v. *Bertin*, 24 La. Ann. 46, the jury were permitted to inspect the place where a burglary had been committed, and a witness for the prosecution was directed to accompany them and point out to them places marked on a diagram, and this was held to be error. We need only say of that case, that the permission given a witness to explain a diagram to the jury was permission to give evidence in the absence of the accused, and that there was not, in Louisiana, any statute allowing a jury to make an in-

spection. These two characteristics plainly mark the difference between that case and this. The case of *Benton* v. *State*, 30 Ark. 328, is not so easily disposed of, but we think that it falls into the same error as the court did in *Carroll* v. *State*, *supra*, of regarding the inspection of the jury as evidence. If it is not evidence, and so our cases declare, the ground falls away from the assumption upon which the whole argument of the case rests, and we concur with the court in *Adams* v. *State*, *supra*, in declining to assent to it. *Benton* v. *State*, *supra*, is, however, addressed to the constitutional phase of the subject, of which we shall hereafter speak, and does not consider the effect of such a statute as ours. It can not, therefore, be deemed an authority upon the construction and effect of the statute, since it does not profess to discuss that subject. Mr. Wharton, in a single sentence disposes of the question, citing the case of *Benton* v. *State*, *supra*, and, of course, must be understood as referring to the procedure in jurisdictions where there is no statute regulating the subject. Wharton Crim. Law (7th ed.), section 3160.

Thus far we have considered the question immediately under examination without reference to the important provision of our statute, that the view can only be ordered upon "the consent of all the parties," as well as without reference to the important fact that the appellant himself requested that the jury be directed to view the premises where the homicide was committed. As the defendant asked the benefit of the provisions of the statute, he must take the benefit just as the statute gives it. In discussing, as we shall presently do, the constitutional phase of the question, we shall refer to authorities which fully sustain this proposition. The statute here under discussion grants a privilege upon condition that only the persons designated by the court shall accompany the jury, and the defendant has no right to assail the action of the court in obeying the provisions of the statute which he himself invoked. The reasoning of the court in *People* v. *Bonney*, 19 Cal. 426, forcibly applies to the phase of the question which

we are here discussing, as well as to other questions in the case. It was there said : " The court had the discretion to permit the jury to view these physical objects; and this was neither in contemplation of the act or otherwise any part of the trial. It was rather a suspension of the trial to enable the jury to view the ground, etc., that they might better understand the testimony. We do not see what good the presence of the prisoner would do, as he could neither ask nor answer questions, nor in any way interfere with the acts, observations or conclusions of the jury. If he had desired to see the ground that he might be assisted in his defence by the knowledge thus obtained, possibly the court would have granted him the privilege; but the fact that the jury went upon the ground without being accompanied by him is no good reason for setting aside the verdict, especially as he neither made objection nor asked permission to accompany them at the time."

We come now to the constitutional phase of the question. We are to be governed by the provisions of our State Constitution, and are not controlled by the Federal Constitution, for the reason that the procedure in trials for offences against the laws of the State is not governed by the provisions of the National Constitution except in cases where the States are named. This is settled law. *Butler* v. *State*, 97 Ind. 378 ; *State* v. *Boswell*, 104 Ind. 541, and authorities cited.

The provision of the bill of rights, conferring upon an accused the right to be confronted by the witnesses, is not infringed by a statute which confers upon a defendant the right to waive the privilege of being confronted in open court by the witnesses of the State. Two things concur in such a statute, the waiver by the accused, and the consent of the State that its citizens may make such a waiver. The rights secured by the Constitution are fundamental, but they may, where the statute so provides, be waived by the accused. " These rights may be separated into two classes, namely, those in which the public generally, and as a community, is interested, as well as the individual to whom they happen directly to apply in any

particular instance; and those, more in the nature of privileges, which are for the benefit of the individual alone, and do not in any way affect the general public, whether the individual avails himself of them or not." Waiver of Constitutional Rights in Criminal Cases, 6 Crim. Law Mag. 182.

The provision in the twelfth section of the bill of rights, securing to one accused of crime the privilege of being confronted by the witnesses, belongs to the second of the two classes named, and is a privilege which may be waived.

In *Boggs* v. *State*, 8 Ind. 463, it was held that an objection that a deposition was taken without the consent of the accused, was waived by a failure to make it in the trial court. The rule, as declared in the case of *Butler* v. *State, supra,* is that a defendant who elects to take depositions under the statute concedes to the State a like privilege, thus waiving his constitutional privilege. This doctrine is firmly supported by the authorities. In addition to those cited in that case may be cited the following: *Williams* v. *State*, 61 Wis. 281; *Wills* v. *State*, 73 Ala. 362; *State* v. *Wagner*, 78 Mo. 644 (47 Am. R. 131); *Hancock* v. *State*, 14 Texas App. 392.

A striking illustration of the doctrine that a defendant in a criminal case may waive a constitutional right is supplied by those cases which hold that where an accused takes a new trial under a statute, he waives his right to insist upon the constitutional provision prohibiting a citizen from being put in jeopardy twice for the same offence.

In *Veatch* v. *State,* 60 Ind. 291, the theory of the appellant was, that, having been tried on an indictment charging him with murder, and having been convicted of manslaughter, he could not again be tried for murder, but the court denied the correctness of the theory, and held that he might be tried for the greater offence. It was there said, among other things: "Now, it would seem, that, if a party takes a new trial in a criminal case, he takes it on the terms prescribed by the statute, and consents to be placed 'in the same position as if no trial had been had.'" Other cases assert a like doctrine. *Mor-*

*ris* v. *State*, 1 Blackf. 37; *United States* v. *Perez*, 9 Wheat.
579; *State* v. *Davis*, 80 N. C. 384; *Com.* v. *Arnold*, 6 Crim.
Law Mag. 61; *Lesslie* v. *State*, 18 Ohio St. 390; *Livingston's
Case*, 14 Grat. (Va.) 592; *United States* v. *Harding*, 1 Wall.
Jr. 127; *State* v. *McCord*, 8 Kan. 232 (12 Am. R. 469).

Another illustration is supplied by the cases which hold
that where the statute so provides a jury trial may be waived.
*Murphy* v. *State*, 97 Ind. 579; *In re Staff*, 6 Crim. Law Mag.
828.

The cases which hold that an accused may voluntarily waive
his right to be present at the trial, or may forfeit it by mis-
conduct, furnish still further illustrations of the doctrine we
are considering. *McCorkle* v. *State*, 14 Ind. 39; *State* v.
*Wamire*, 16 Ind. 357; *Fight* v. *State*, 7 Ohio, 180; *Bar-
ton* v. *State*, 67 Ga. 653 (44 Am. R. 743); *United States* v.
*Davis*, 6 Blatch. 464. It would not be difficult to add many
authorities to those we have cited, but we deem them amply
sufficient to sustain our proposition that the statute under dis-
cussion is not unconstitutional.

Assuming, as we feel satisfied we may do, that the statute
is constitutional, and assuming that we have correctly con-
strued the statute, there can be no question that the trial
court committed no error in sending the jury, at the appel-
lant's request, to view the place where the homicide was
committed.

A new trial is asked upon the ground that one of the
counsel for the State was guilty of misconduct in the argu-
ment to the jury. There are different phases of this ques-
tion, and we will dispose of them as they are presented by
the record. The bill of exceptions thus presents one phase
of the question : " Mr. Anderson in his closing argument said :
' Mr. Thompson talks about the kindness with which he
treated the memory of Billy Lane; that he did not attack it,
and only brought out the conduct of Billy Lane, on the night
he was killed, because it was a part of the transaction and
circumstances culminating in his death. Gentlemen of the

Shular v. The State.

jury, if Mr. Thompson could have found any proof to show anything against the character of Billy Lane, he had the right to introduce it. He had the right to prove that Billy Lane was a desperate, quarrelsome and dangerous man. Any evidence of that kind would have been competent and proper. But we, gentlemen of the jury, were precluded by the law from attacking the character of defendant. We were not allowed to show what the character of defendant was.' Whereupon the defendant's counsel objected that the State's attorney was improperly commenting upon the character of the defendant, and was endeavoring to argue by innuendo that the character of the defendant was bad. Whereupon the court remarked that 'The character of the defendant is not in question and is not to be commented upon.' The said Albert B. Anderson thereupon said: 'I have not commented upon his character; I was just going to' say, gentlemen of the jury, that while we were precluded by the law from showing what the character of the defendant was, it appeared in evidence from the defendant's own witness what the character was.' To which last statement of the said Albert B. Anderson, and also to the whole of the aforesaid statement so made the defendant at the time excepted."

So far as the prosecuting attorney's comments upon the right of the defendant to show the character of the deceased are concerned, we need only say that no fault can be found with them, for it is the law that, in the particulars named, the character of the deceased may be proved, and it was not an unreasonable inference that if it had been bad the defendant would have given evidence to that effect.

Nor was the counsel in error in saying that the State had no right to attack the character of the defendant, although, as the court rightly directed the jury, his character was not "in question, and is not be commented on." Nor was there material error in the statement that the character of the accused was shown by the testimony of his own witnesses. There are cases where the character, or, more strictly speak-

ing, the disposition, of a person accused of crime, may appear from the testimony, and there was evidence in this case tending to show the disposition of the defendant. Where facts are before a jury, it is proper for counsel to draw inferences from them, and even though they proceed illogically the error will not require or justify a reversal. It is not easy to define the boundary between fair debate and misconduct, but we can not say that the line was passed in this instance in what was said as to what the evidence established.

In the case of *Proctor* v. *DeCamp*, 83 Ind. 559, we said: " There was evidence, in the case before us, upon which the appellee's counsel had a right to comment. Granting that he drew from it an unauthorized conclusion, or that he gave it a wrong coloring and meaning, he was still within the evidence, and when this is so courts can not interfere. If counsel go beyond the evidence and bring in foreign and unproved matters, courts should interfere, and if the trial court does not interfere, and the matter improperly brought before the jury is of a material character, the appellate court may reverse the judgment. But it is not every violation of the rules governing the discussion of causes before the jury that will entitle the complaining party to have the verdict set aside ; for if the statement be an unimportant one, or one not likely to wrongfully influence the jury, the verdict will be upheld." This is the rule declared and enforced in *Combs* v. *State*, 75 Ind. 215, in *Morrison* v. *State*, 76 Ind. 335, in *Epps* v. *State*, 102 Ind. 539, and in *Anderson* v. *State*, 104 Ind. 467.

This case differs very materially from the cases of *Brow* v. *State*, 103 Ind. 133, and *Bessette* v. *State*, 101 Ind. 85, for in those cases the counsel did not simply draw a wrong inference from the facts, or erroneously state a proposition of law, but in one of these cases the counsel assumed the position of a witness by stating very material facts, and in the other the counsel not only usurped the place of a witness, for he also singled out and assailed one of the jurors. There is still another distinguishing feature, and that is this, here the

court correctly stated the law to the jury, saying that the question was not before them, and must not be discussed; while in the cases referred to the court declined to interfere, and neither corrected nor rebuked the counsel.

The other phase of the question presented by the assignment in the motion for a new trial, that the State's counsel was guilty of misconduct, is of a somewhat different character from that just discussed, but, still, we think that it falls within the same general principles. The facts upon which the alleged improper statement of the counsel for the State was based were collateral to the principal and controlling questions in the case, and the statement was made in response to a statement of defendant's counsel.

We do not think that it can be justly said that the statement of the prosecuting attorney upon a merely collateral matter worked an injury to the substantial rights of the appellant, and it is only in cases where there is a substantial injury to the appellant that we can reverse. As was said in *Morrison* v. *State, supra,* "If, for every transgression of the prosecuting attorney beyond the bounds of logical or strictly legal argument, the defendant could claim a new trial, few verdicts could stand, and the administration of criminal justice would become impracticable." What was said in *Combs* v. *State, supra,* bears so directly upon the question as we here encounter it, that we quote from the opinion in that case: "If every immaterial assertion or statement which creeps into an argument were to be held ground for reversal, courts would be so much occupied in criticising the addresses of advocates as to have little time for anything else. Common fairness requires that courts should ascribe to jurors ordinary intelligence, and not disregard their verdicts because counsel, during the argument, may have made some general statements not supported by evidence. Of course, there may be cases where the matters stated are so weighty and important as to do the accused injury, and, whenever this is so, the appellate court should not hesitate to adjudge a reversal."

In this instance it is evident that from the character of the counsel's statement, from the matter upon which it was based, and from the cause which called it out, that we ought not to reverse the judgment of the trial court.

We have given the evidence a careful study, and are convinced that the defendant was convicted of the lowest grade of homicide that the law and the evidence will warrant. There is evidence strongly tending to show that the killing was not only malicious, but that it was also premeditated. The first quarrel between the appellant and the deceased took place quite a long interval of time before the fatal shot was fired, and there is evidence strongly tending to show that the appellant, after leaving the place where the first quarrel occurred, returned for the purpose of renewing it and of doing the deceased great bodily harm, if not of taking his life. If the evidence adduced by the State was credited by the jury, and to us it seems far more credible than that adduced on the part of the defence, the verdict of manslaughter is a mild one, and was not influenced in any degree by the remark of the prosecutor.

The trial court should promptly check any departure from fair debate, and if the departure is a grave one, sternly rebuke, or, if need be, punish the counsel, but it does not follow from this that in every instance, where there is a transgression of the rules that govern in the argument of causes, there should be a reversal. As the cases to which we have referred decide, the appellate court can only interfere where substantial injury has been done the party, but the trial court may, and should, always keep counsel within the bounds of legitimate argument. If counsel undertake to state matters not in evidence, or to state facts which could not be put in evidence, the trial court should restrain them by a quick and sharp rebuke, but the omission of the trial court to do its duty, while it may be a just reason for criticism, will not always entitle the accused to a judgment annulling the verdict.

There was no error in directing the jury, as the court did

in the fifteenth instruction, that in passing upon the credibility of a witness they might consider "his impeachment in any case where the witness is found to be successfully impeached." It seems clear that unless a witness is successfully impeached he is not impeached at all. An attempt to impeach that results in a failure can not be regarded as impairing the credit of a witness. The court did not, as counsel assume, tell the jury that they should not consider evidence offered to impeach a witness, but informed them that in deciding upon the credibility of a witness they might consider his impeachment, if he was found to be successfully impeached. This was simply affirming that if the witness was impeached they might consider that matter as affecting his credibility—for the language used conveys this meaning and none other—since an attempt to impeach that is not successful goes for nothing. Of course, it is for the jury to determine whether the witness is impeached, as well as to determine all other matters affecting his credibility; but there is nothing in the instruction that conflicts with this principle. The matter of the credibility of witnesses was not taken from the jury.

It is contended with much ability by appellant's counsel, that the judgment should be reversed, for the reason that the jury were guilty of misconduct, but the question can not be considered by us, because it is not properly presented by the record. The record shows that the defendant filed affidavits with his motion for a new trial; that the State asked leave to file counter affidavits and to subpœna the jurors who tried the case; that the defendant unsuccessfully objected to granting the request of the State; that the court heard the evidence upon the motion at the appointed time; that a stenographer was appointed to take the testimony; that the investigation occupied several days, and that the court, after "being duly advised," overruled the appellant's motion. No affidavits are in the record except those filed with appellant's motion for a new trial, nor is the evidence given on the hear-

ing of that motion in the record. This statement of the condition of the record shows that there is nothing more than the affidavits on one side of the controversy before us, and we can not presume that the statements made in them were not completely met and overthrown by the evidence adduced by the State; on the contrary, we are imperatively required to presume in favor of the ruling of the trial court.

Judgment affirmed.

Filed Feb. 9, 1886.