Spear, J.
The proposition of error urged by counsel is that the circuit court is without jurisdiction to reverse upon the ground that the verdict *378 is against the weight of the evidence, or is not sustained by sufficient evidence, because the bill of exceptions does not contain all of the evidence before the jury. This because what the jury sees upon a view in a condemnation case is evidence, properly to be considered by the jury in arriving at a verdict, and that the court, not having had the advantage which the jury has had of a view of the premises, and thus not having all the evidence before it, can not set aside a verdict or reverse a judgment' rendered upon that verdict, on the ground that it is against the weight of the evidence.
It is urged by the learned counsel that this propó- ■ sition necessarily results from a proper construction of sections 6427 to 6430 of the Revised Statutes, and especially from the provision of the latter section that after the return of the jury into court from its view of the premises witñessés may be examined by either party, and if more than three are called on the same point the judge may tax the costs of the additional witnesses to the party calling them. These provisions lead to the clear implication, say the counsel, that the calling of witnesses is optional with the parties and that a valid verdict and judgment may be rendered upon the view alone; and if this be so it would certainly follow that what the jury see upon the view is evidence properly to be considered by them and in the absence of other evidence may be the basis of their verdict.
It must be conceded that there is much plausible force in this contention and that it finds support, more or less directly, in a number of decided cases, and to some extent by the opinion of text-writers. *379 A case much relied upon is that of Israel v. The Z. & O. Ry. Co., 19 W. L. B., 258, reported with learning and much, care in the common pleas of Washington, by Sibley,- J. Many authorities are reviewed by the learned judge, and the conclusion is reached that what was disclosed on observation by the jury of the premises should be regarded by them as evidence in connection with the testimony of witnesses in making up their verdict, and that the verdict cannot be disturbed on a review on the ground that it is against the weight of the evidence. The judgment was affirmed by the circuit court of that county at its September term, 1888. Judge Rockel, in his valuable work on Ohio Probate Practice, section 1710, after stating the question and citing a number of cases on both sides of it, inclines to the opinion, though with much doubt, that what the jury sees upon the view constitutes evidence. Attention is also called by the counsel to Thompson on Trials, sections 893 to 901. Also to Parks v. City of Boston, 15 Pick., 198, and to Washburn et al. v. Railroad Co., 59 Wis:, 364. Reference to these cases and other authorities cited by counsel will be made further on. Cases outside of this state principally relied upon .are City of Topeka v. Martineau, 42 Kan., 387, and Kiernan v. C. S. F. & C. Ry. Co., 123 Ill., 188. The former was an action against the city for damages for injuring property by reason of the lowering of the established street grade in front of it. In’ the charge to the jury it was said that: “The court has sent you, under charge of. a bailiff, to examine the premises in question. You may, in considering your verdict, take into consideration the result of your observation in connection with the evidence pro *380 duced before you.” This was held not to be error. In the opinion Johnson, J., observes: “It is assumed that the instruction given warrants the jurors in basing their verdict on the knowledge gained at the view in disregard of the testimony given in court/ if they so desire. This assumption is unwarranted by the language employed. The court does not even say that the information so acquired is evidence, much less that the verdict may rest alone on such knowledge. It advises them to use the result of their observation in connection with the evidence. In a prior instruction the jury were told that their verdict should be founded on the evidence and on the law, which, taken in connection with the instruction objected to, was no more than to say that in arriving- at a verdict they were to judge the evidence in the light and with the aid of what they saw at the view. 'We think the instruction was not erroneous.” The Illinois case was brought by the company for the purpose of condemning land for its right of way. The holding is: “The result of a jury’s personal view of the land over which the railroad is sought to be laid, is evidence proper to be acted upon by them; and if they believe, from the whole evidence, that they have, from such view, arrived at a more accurate judgment as to the value of the premises sought to be taken, and of the damages, than that shown by the evidence, they may, upon the evidence, rightfully fix the value of the land taken and the damages, at the amount so approved by their judgment found from the personal examination, even though it differed from the amount testified to, and the weight of the testimony given by witnesses in *381 open court.” No case puts the proposition more strongly .than this. .
The reasoning of counsel and the authorities cited by him are persuasive, but, to our mind, they are not convincing. To get at the meat of the matter it is important that we give special attention to our constitutional provisions and further examination of the sections of our statute, bearing upon the subject. Under the provision of the constitution of 1802 that private property shall be held inviolate but subservient to the public welfare provided compensation in money be made the owner, it was held that compensation was not required to be first made, and that it might be taken for such use where provision for the assessment and payment is made whether the owner was actually paid or not, it being sufficient if provision be made by law. for compensating him; also that benefits conferred might be set off against the value of the property so taken. No jury being required, it was the practice, authorized by statute, to have compensation determined by three commissioners who were sent out to view the premises. Manifest abuses having arisen under this method of appropriating private property, the constitution makers of 1851 made a radical change in the procedure by section 19 of the Bill of Rights and section 5 of article XIII, by which it is provided (section 19) respecting compensation that in time of war or other public exigency imperatively requiring its immediate seizure, etc., a compensation shall be made the owner in money, and in all other cases a compensation for the property so taken shall ñrst be made in money or secured by a deposit of money;.and such compensation shall be assessed by a jury without *382 deduction for benefits. And (section 5) that no right of way shall be appropriated to the use of any corporation until full compensation therefor be first made in money, or first- secured by a deposit of money, irrespective of any benefit, which compensation shall be ascertained by a jury of twelve men in a court of record. The implication clearly follows that the jury intended is a constitutional jury of twelve corhpetent. men, and their conduct to be directed by a court. “The word ‘jury’ * * * means a tribunal of twelve men, presided over by a court, and hearing the allegations, evidence and arguments of the parties.” Lamb, et al. v. Lane, 4 Ohio St., 167. “The word ‘jury’ in the section cited, as well as in the other places in which it occurs in the constitution, has uniformly been construed to mean a tribunal of twelve men, presided over by a court, and under its direction hearing the allegations, evidence, and arguments of the parties, and declaring the truth upon the evidence submitted, and the law given them by the court.” Smith et al. v. A. & G. W. Rd. Co. et al., 25 Ohio St., 91.
To give effect to these constitutional require-, ments, the general assembly, at its session of 1852, (50 Ohio Laws, 201), enacted a general appropriation act “to provide for compensation to owners of private property appropriated to the use of corporations,” which is now, with various amendments, codified as Chapter 8 of Title 2 of the Revised Statutes, embracing sections 6414 to 6453, inclusive. These sections provide for the filing of a petition by the corporation in the probate court, the giving of notice -to the several land owners, the disposal by the court of matters respecting jurisdictional questions, regarding the existence of the corpora *383 tion, its right to make the appropriation, the necessity for the same and its inability to agree with the owner. These questions being found for the corporation, a jury is to be drawn from the jury box by the clerk of the common pleas and sheriff and a writ issued for the attendance of the jury on a day named, the writ to be served and returned as in other cases. Each owner is entitled to a “separate trial by jury, verdict and judgment. The trial shall be conducted, and evidence admitted, and bills of exception may be taken as provided in civil actions. Amendments may be made, adjournments had, jurors challenged, and the panel filled as is usual in ordinary actions. The form of oath to be administered to the jury, given by section 6427, is in substance that they will justly and impartially assess, according to their best judgment the amount of compensation due the owner irrespective of benefits, and will ascertain how much less valuable the remaining portion will be in consequence of such appropriation. Upon motion of either party the judge may issue a writ to the sheriff directing that the jury be conducted to view the property. On the return of the jury, where a view is had, witnesses may be examined before the jury, though if more than three witnesses be examined by either party on the same point the judge may tax the cost of such additional witnesses to the party calling them. On return of the verdict, which is to be in writing, a motion for new trial may be interposed by either party, and if that be overruled a judgment shall be entered confirming the verdict, and thereupon, on payment into court of the condemnation money the corporation may take possession. Then follow provisions for the. payment *384 of costs, for the taking of bills of exceptions as provided by the sections of the statute respecting like bills in civil actions, for petitions in error to the common pleas, in which court “the proceedings in error shall be conducted as in civil actions.” If the judgment be reversed the cause shall be retained in the common' pleas for trial and final judgment as in other cases. Conflicting claims to the condemnation money are to be determined by suit in the common pleas.
It seems to us utterly improbable to suppose that, after making so elaborate and complete a statutory scheme for a full trial in a court of record to a constitutional jury, under the control of a judge, the general assembly can have intended that, after all, there is not to be a full trial in a court of record, but, instead ’of that, a partial trial in court, and the remainder of the trial away from the presence of the judge, away from the court house, and perhaps a dozen miles in the country; that after careful provision for bills of exceptions, for review on error, there is not to be any review on error respecting the facts and the weight óf the evidence given to support alleged facts, although the proceedings may be conducted in two courts, each of which has power to review on the weight of the evidence in civil actions, and this statute itself providing that this error • proceeding shall be conducted as in civil actions. '
Counsel is surely right in assuming that if the impressions obtained by the jury from the view are themselves evidence in the case there is no way by which that evidence can be carried into a bill of exceptions and hence it inevitably follows, as he *385 insists, that there is not power in a reviewing court to pass upon the weight of the evidence.
But while this. last consideration ought, as we believe, to prevent assent to the construction of the statute contended for, in our judgment the objection first stated is of far greater consequence. Is it not plain that the jurors, if the view be evidence, would become silent witnesses? That the verdict might be based wholly on their own inspection of the premises, in which situation the cause would be determined not upon evidence given in court, but upon personal inspection. If the impressions of the jury thus obtained are evidence then the taking of that evidence becomes a part of the trial. How is it possible that such a trial is a trial conducted “as provided- in civil actions ?” In what civil actions, pray, do we find the trial to the-jury conducted partly in court and partly miles away from court? If the testimony is .to be taken in part out of court, and as to that part in utter silence, how can the parties cross-examine ? How can they .offer rebutting, or explanatory testimony? How can the counsel intelligently argue the questions of’ fact? In short, how is it possible to .have a fair trial? Again, jurors are selected partly because of their general intelligence and general knowledge of affairs, but not because of their supposed particular knowledge of the particular subject. The body may be made up of tradesmen, professional men, merchants, carpenters, shoemakers, tailors, men with little if any knowledge of real estate values, and yet it is proposed to allow them to substitute their judgment for -that of men who before they are permitted to testify must qualify and show *386 expert knowledge. The proposition contended for seems untenable from every point of view.
Recurring to some of the authorities cited we note that Thompson, in his work on .Trials, section 893, observes (and it would appear somewhat flippantly) that: “There is no sense in the conclusion that "the knowledge which the jurors acquire by the view is not evidence in the case.” Further on the author adds: “But the evidence which the jurors may acquire from making the view is not to be elevated to the character of exclusive or predominating evidence. They are not to disregard other evidence in regard to the character and value of the property; and an instruction which conveys to them the impression that they nray do so, is erroneous.” If this class of evidence is not to “predominate,” in case the jury think it ought to “predominate,” we wonder what office it can perform ? It seems manifest that observations of text-writers like this author, especially in the absence of a knowledge of constitutional and statutory requirements applicable to the particular case, can be of but little if any practical value.
The Wisconsin case cited was an appropriation proceeding in which the holding is: “In assessing the compensation to be made the owner of land taken by a railroad company the jury may resort to their own knowledge of the premises,. obtained from a view thereof, and to their general knowledge of the elements which affect the assessment, in order to determine the respective weight of conflicting testimony as to value and damages, but their assessment must be supported by the testimony or it cannot stand. Instructions from which the jury might reasonably have understood that *387 they were to assess the compensation according to their own knowledge, judgment and good sense, aided by their view, of the premises, and that they might do so without regard to the testimony, or in opposition thereto, are held erroneous.” In commenting on the facts the learned judge observes : “At the common law a view might be had in a real action, and by statute in any action, to the end that the jury might see the land or thing claimed to enable the jurors better to understand the evidence on the trial. Jacob’s Law Diet., title ‘View.’ We think such is still the office of a view. Hence, whatever the jury in each of these cases learned of the lands in question by the view, was available to enable them to determine the weight of conflicting testimony respecting value and damages, but no further. For reasons hereinafter more fully stated, we think such value and damage could only be assessed upon the evidence given by the witnesses, and that an assessment outside of the evidence could not be upheld.” What the constitutional or statutory provisions on the subject in that state are the record does not disclose,, but that, under their law, the right to review on the weight of the evidence is clearly shown.
Parks v. Boston, supra, much relied upon by counsel, was a street appropriation case, opinion by Chief Justice Shaw. The holding is: “Where a jury empanelled * * * to assess the damages sustained by the owner of such land * * * have viewed the land, the jurors may exercise their own judgment and knowledge of like subjects, in estimating the damages; but it seems that if a juror has knowledge of any fact bearing upon the case he must disclose and testify to it in court.” The *388 learned jurist’s citations of statutes are not enlightening to a stranger, but one paragraph of the opinion seems to cast and important side light upon the conclusion. While strongly inclined to think that the instruction would have been correct in a common law action, yet, continues the opinion, “this was not an’ action, but an estimate of damages in laying out a highway. The act for widening streets in the city, referred to in the general act, Statutes 1786067, for the mode of assessing damages. By that act, section 4, it was provided that any person damaged' in his property should recover of the town reasonable satisfaction, according to the estimation of a committee; and that.if any person were aggrievéd by the doings of the committee in estimating damages he might apply to the court of sessions, who were empowered to hear and finally determine the same by a jury. It is well known that the course of proceeding, both before the locating committee and before the jury, was to go upon the land and there make the appraisement or estimate; if by a jury, before the sheriff, the verdict being returned into court under seal.” So that the actual case before the court seems to have been like unto such a proceeding in this state would have been under the old constitution.
Recurring to the Illinois law upon the subject, attention is called to the case of A. T. & S. F. R. R. Co. v. Schneider et al., 127 Ill., 144, which was a condemnation proceeding in which the holding by the same court is “While the personal view of the jury in a condemnation case is in the nature of evidence, and is to be. considered by them in connection with other evidence, yet this, nor any other court, has ever held that the jury may ignore all *389 the other evidence, and assess the' compensation and damages directly contrary thereto. It is only when the evidence is conflicting that the jury may draw their own conclusions from a personal view.” And, as though the holding in the Kiernan case had gone to an undue length, the judge reporting the case observes: “While there is language used in the construction commented upon in Kiernan v. C. S. F. & C. Ry. Co. which would seem to go further, and authorize the jury to fix the amount) independent of the sworn testimony,' yet the instruction, taken as a whole, was thought to be in accord with the decisions above referred to, and was approved on their authority.” In an earlier case, McReynolds v. B. & O. Ry. Co., 106 Ill., 152, that court holds that: “The opinions of witnesses upon the question of damages, in a proceeding to condemn land for a right of way, are not to be passively received and blindly followed, but they are to be weighed by the jury and judged of in view of all the testimony in the case and the jurors’ own' general knowledge of affairs, and have only such consideration given to them as the jury believe them entitled to receive.” In the opinion it is observed: “The present proceeding is not one by the land-owner to have an assessment made of his damages or compensation for the taking of his land, but it is a proceeding instituted by the railroad company to ascertain what is a just compensation for the land sought to be appropriated. By our state constitution the land cannot be acquired without a just compensation to the land-owner to be ascertained by a jury. The statute upon the subject contemplates that the jury are to ascertain the compensation ‘after' hearing the proof offered.’ Should *390 there, then, be no proof offered, the petitioner would be defeated. It would fail of having an ascertainment by the jury upon proof offered of what was a just compensation for the land, without which it would be unable to acquire the land sought to be appropriated.” On a review of the weight of evidence it is remarked that: “The opinions of witnesses, here, were extremely conflicting. The jury went upon the premises, and saw for themselves the situation. What was the influence of the evidence which the jury thus derived from their own personal observation in determining the value to be placed upon the opinions of witnesses we know not.” This case, therefore, justifies the conclusion that the Illinois courts will review the proceeding on the weight of the evidence although the personal observation of the jury is evidence and although it- is impossible to incorporate such evidence in the bill of exceptions. It also suggests the inquiry how there could be a failure of proof though' no witnesses were called provided the view is deemed evidence. It would seem, also, to dispose adversely of the contention in this case that a verdict might properly be rested wholly upon the view of the jury. We admit our, inability to reconcile the various Illinois decisions on the subject.
We are not contending that in passing upon issues .of fact jurors may not take account of their general knowledge of affairs, that likely to be possessed by all intelligent men, or general knowledge of the subject of the inquiry. Hence the cases of Head v. Hargrave, 105 U. S., 45 and McIntyre’s Exr., v. Garlick, 8 O. C. C., 416, cited by counsel, need not be further considered.
Attention is called to Williams v. Lockoman ei *391 al., 46 Ohio St., 416. This was a ditch case. The syllabus is: “On an appeal to the probate court from the order and finding of a joint board of county commissioners, determining that a proposed ditch is necessary, and will be conducive to the public health, convenience and welfare, the jury, in examining and determining the matter appealed from, may, under section 4467 of the Revised Statutes, consider in evidence, facts madé known to them personally from an actual view of the premises.” We wish to emphasize the fact that this case involves only the effect of the view of the jury respecting the necessity of the proposed ditch, and whether it would be conducive to the public health, convenience and welfare. It did not involve the question of compensation or damages in the slightest degree. The questions in the case are preliminary questions and the rule applied would not seem to contravene any constitutional requirement.
Schweinfurth, Admr., v. C. C. C. & St. L. Ry. Co., 60 Ohio St., 215, is cited. That was a personal injury case. At the trial the defendant procured an order of court directing the jury to witness certain experiments to be conducted by it at the place of the accident intended to illustrate for the information of the jury the way in which the train was being operated at the crossing at the time the deceased was killed. This court held that an instruction that the information so obtained was competent evidence for the consideration of the jury was not erroneous, basing the- holding apparently upon the idea that the experiments in question were in principle like experiments conducted before the jury in open court. It would seem that the application for the order might well have been refused. *392 However, we regard the case as not strictly analogous to the case at bar, and desire to add that the rule applied should not be extended.
We think the rule followed by this court in. Machader v. Williams, 54 Ohio St., '344, is the correct rule and applies to the case at bar. That was an action in trespass for invading the premises of plaintiff and, by digging, effecting a change of grade, in which, at the trial, the jury was taken to view the premises.'. This court held that: “The view by the jury of the property which is the subject of litigation, or of the place where a material fact occurred, which may be ordered in a civil action under section 5191, Revised Statutes, is solely for the purpose of enabling them to apply the evidence offered upon the trial.” This principle is- fully supported by many adjudications, among' them Close et al. v. Samm et al., 27 Ia., 503; Stephens v. The D. & St. P. Rd. Co., 36 Ia., 327; Wright v. Carpenter, 49 Cal., 607; City of Grand Rapids v. Perkins, 78 Mich., 93; Flower, v. Rd. Co., 132 Pa. St., 524; and Laflin v. C. W. & N. R. Co., 33 Fed. Rep., 415. We call special attention to the following Indiana cases: E. I. & C. S. L. Rd. Co. v. Cochran, 10 Ind., 560; J. M. & I. Rd. Co. v. Bowen, 40 Ind., 545; Heady v. The V. Mt. S. & V. Turnpike Co., 52 Ind., 117. In the Cochran case (an appropriation case), the court held that where the jury were sent to examine the premises and the record contained nothing in relation to the impression produced upon the minds of the jury by the examination, the evidence was not all in the record though the bill of exceptions stated that it contained it all. The rule thus given was followed in divers cases in that state for a matter of fourteen *393 years, when in the second case above cited, the court, for reasons well supported by copious argument, distinctly overruled the Cochran case and held that “a bill of exceptions may contain all the evidence, although it appear that the jury were allowed to inspect the place where the matters referred to in the pleadings occurred.” In the turnpike case (also a right of way case) the court affirms the Bowen case and holds' that the impressions made upon the minds of the jurors by the examination of the premises do not constitute a part of the evidence in the cause, quoting with approval the following from Close v. Samm, supra, respecting the view: “It seems to us that it was to enable the jury, by the view of the premises or place, to better understand and comprehend the testimony of the witnesses respecting the same, and thereby the more intelligently to apply the testimony to the issues on trial before them, and not to make them silent witnesses in the case, burdened with testimony unknown to both parties, and in respect to which no opportunity for cross-éxamination or correction of error, if any, could be afforded either party.” ■
Nor are any of the provisions of our statute believed to be inconsistent with this conclusion. The provision of section 6430 that after the return of the jury where a view is had witnesses may be examined before the jury is a direction as to the order of trial, and itself suggests that the view may aid the jury in applying the evidence at the trial; and the further provision that if more than three witnesses are examined on the same point the court may tax the fees of the additional witnesses to the party calling them, which counsel regard as *394 important, we think is intended simply as a discouragement to the calling of a multiplicity of witnesses. Surely no provision was necessary to authorize the giving of oral testimony at the trial.
Before closing we desire to call attention to the case of The L. E. & W. Rd. Co. v. Commissioners, 63 Ohio St., 23. This was a ditch case. An appeal was taken by the company from the finding and order of the commissioners to the probate court as to both the preliminary question of public health, convenience and welfare, and the matter of compensation and damages. Respecting the first question the court charged the jury that “if it is apparent to you that the proposed ditch will be conducive to the public health, convenience or welfare of the neighborhood through which it will pass, the commissioners are authorized to construct the same, and in that case as to this first proposition your verdict will be for the establishment of the ditch;” and as to this branch of the case the court held that, “the jury were entitled to consider as evidence on this subject the facts brought to their knowledge from their actual view of the premises.” As to compensation this court held: “The charge of the court on the subject of compensation for land taken seems unobjectionable. It is as follows: Tf you find from the evidence that in the construction of the proposed ditch, any land belonging to the appellant, The Lake Erie & Western Railroad company, will be appropriated to the public use,, it will be your duty to determine the value of the land so appropriated, giving due consideration to the location of the land, and the amount of the land that would be appropriated, and to return the amount in your verdict as compensation due the appellant for the *395 land so appropriated.” And respecting damages the holding is: “With respect to the damages claimed by the company to its other property, the jury was instructed that: Tf you find from the evidence, that any property owned by the appellant would be damaged by the construction of the proposed ditch, it will be your duty to determine the amount of the damages which the appellant would suffer by reason of the construction of such ditch, and to return the amount in your verdict as so much due the appellant for such damages.’ We find no error in this charge. It is a corred statement of a general rule.” (The italics are ours.) The rationale of this holding, as it appears to us, clearly is that with regard to the first question the jury might consider the view as evidence, but with respect to compensation and damages the jury was to be governed wholly by the evidence introduced in court.
We recur to the initial proposition that, by virtue of the guarantees of the constitution, the property }f the land-owner cannot, where no public exigency imperatively requires it, be taken for public use except upon the verdict of a jury rendered in a trial in a court of record where the allegations, evidence and arguments are heard under the control of the court, such verdict to. be based on the evidence thus submitted and the law given by the court. ■ And applying this test to the case at bar our conclusion is that the impressions made on the minds of the jurors by the view of the premises were not evidencé in the cause, and therefore the bill did contain all the evidence and the circuit court did not err in passing upon the weight of the evidence. These conclusions we believe to be in *396 accord with the general understanding of the bench and bar throughout the state for many years past. So far as our observation extends, the holding in the Washington county common-pleas hereinbefore referred to is the first departure from the generally-accepted rule. As before stated, that judgment was affirmed by the circuit court of that county, (4th circuit.) but it is pertinent to add that the circuit court of the 5th circuit in the present case declined .to follow it. Whether the judgment of that. cour-t in this case was or not the correct judgment we do not inquire inasmuch as it is not the habit of this court to consider questions arising upon the weight of the evidence.

Judgment affirmed.

Shauck, C. J., Price, Summers and Davis, JJ., concur.