[No. 6137.]

THE DENVER, NORTHWESTERN AND PACIFIC RAILWAY COMPANY v. HOWE ET AL.

1.   **Eminent Domain—Assessment of Damages—Special Value for Particular Uses,** is to be considered in the assessment.—(260, 261)

2.   ——**Evidence—View by the Jury** — Whether the view by the jury is regarded as affording evidence in itself, or as merely to enable the jury to better understand and apply the evidence given by the witnesses, in either case the assessment is to be

made upon the evidence, and it is not error to so charge without calling the attention of the jury to their view of the premises. —(262)

3.  ——Market Value—In defining market value, it is proper to inform the jury that it is such a price as the property will sell for, "where there is a demand."—(262, 263)

4.  ——Verdict—The statute (Mills' Stats., § 1732; Rev. Stats., § 2432) is mandatory.  The damages to the land not taken, and the benefits, must be separately stated.—(265)

5.  ——Evidence of Benefits—Not fixing any definite amount or value of the supposed benefit, in dollars, is to be rejected. —(265)

6.  —— Respondent's Pleading, Fixing and Praying an Amount of Damages, not withdrawn or amended, concludes him; an award of a greater sum will be reduced to the amount of his statement.—(265-267)

7.  ——Costs—Costs are not allowed to the petitioner, even upon a successful appeal.—(268)

8.  Appeals—Harmless Error—In condemnation proceedings, the court instructed the jury that, if the land had no market value, they should assess it at its true and actual value. There being evidence of a market value, and the assessment not exceeding this, held that the instruction, if erroneous, was harmless.—(268)

9.  Instructions—To Be Considered as a Whole—Error in one point of the charge is sometimes corrected by a subsequent direction.—(263)

10.  ——Repetition — The court cannot be required to reiterate an instruction already given in substance, though in other words.—(264)

*Appeal from Grand District Court*—Hon. A. H. DEFRANCE, Judge.

Mr. DAVID P. HOWARD, Mr. CHARLES J. HUGHES, Jr., Mr. GERALD HUGHES, and Mr. JOHN Q. DIER for appellant.

No appearance for appellees.

Mr. JUSTICE MUSSER delivered the opinion of the court:

This action was brought by the appellant, as petitioner, under our eminent domain statutes, to

(17)

condemn a right of way for its railroad through the land of appellees. The trial was to a jury. The verdict fixed the value of the property actually taken at $3,089.68, and the damages to the land not taken at $1,000.00, and found that no benefits accrued. The right of way sought is about a mile and a half long and runs diagonally from the northeast corner of respondents' ranch to a point on the west line, a short distance north of the southwest corner, cutting the ranch in about two equal parts. It is two hundred feet wide for about two-thirds of its length, and three hundred feet wide the rest of the way, and embraces 46.66 acres. It included the buildings and improvements on the ranch, which consisted of a main log ranch-house with five rooms, and other buildings connected with it, a bunk-house, 40 x 18 or 20 feet, fences, corrals, etc. The ranch, to the north of the right of way, contains bluffs along the entire length, and on the right of way and to the south the land is lower and level, consisting of bottom lands. The evidence tended to show that there was no convenient and suitable building site north of the right of way, owing to the bluffs; that the bottom lands overflowed at times, and that owing to its elevation, location and area, the land upon which the improvements stood was the most advantageous building site there was on the ranch, and possessed a special value for that purpose.

1. The first assignment of error noticed in the brief of the appellant relates to instruction No. 1. In that instruction, the jury were told, that in assessing the value of the land and property actually taken, its true and actual value, at the time of the appraisement, must govern; that where land has a market value, that value must govern, and in such a case the market value is the true and actual value. The jury were then told that if they believed from the

evidence that the land had a market value, they should be governed thereby, but if they believed from the evidence that the land had no market value, they must find, from all the evidence in the case, the true and actual value of the property actually taken, and assess its value accordingly. The appellant complains of the part of the instruction which told the jury what they should do if they found that the land had no market value. Section 2431, Revised Statutes, provides that in estimating the value of all the property actually taken, the true and actual value thereof, at the time of the appraisement, shall be allowed and awarded. The appellant claims that the market value of the land was the criterion by which the jury were to determine the true and actual value; that it had a market value; that there was testimony showing such a value, and in consequence that the court erred in giving the jury liberty to find that it had no market value. Viewing the matter in the light of the testimony and the actual verdict of the jury, it is not necessary to enter into a discussion of the legal questions presented by this assignment of error.

In the brief, after stating the purport of the testimony of the witnesses relative to the value of the land, it is said:

"Unconsciously, however, the amount so fixed by these witnesses represented to each the true market value of the land, being the amount in the opinion of each witness which the land would bring if it were offered for sale by one who desired, but was not obliged, to sell, and was bought by one who was willing, but not obliged, to buy."

The appellant is right in this view of the testimony of the witnesses, except that the term "unconsciously" cannot be applied to all the witnesses. And again the brief says:

"Examination of the evidence contained in the bill of exceptions discloses that, according to the testimony of all the witnesses, the right of way sought to be condemned had a market value capable of ascertainment by the jury."

If the verdict of the jury was within the market value thus shown by the evidence, then, even under the view taken by appellant, the instruction relative to no market value was harmless. As said before, the evidence on the part of respondents tended to show that the building site upon which the improvements were erected, owing to the natural conditions of the ranch, was peculiarly advantageous as a building site, and that, taken in connection with the ranch, it had a special value for that purpose. In § 479, Vol. 2, Lewis on Eminent Domain (2nd ed.), it is said:

"The market value of property includes its value for any use to which it may be put. If, by reason of its surroundings, or its natural advantages, or its artificial improvements, or its intrinsic character, it is peculiarly adapted to some particular use, all the circumstances which make up this adaptability may be shown, and the fact of such adaptation may be taken into consideration in estimating the compensation. Some of the cases hold that its value for a particular use may be proved, but the proper inquiry is, What is its market value in view of any use to which it may be applied and of all the uses to which it is adapted?"

And after quoting from the case of *Boom Co. v. Patterson*, 98 U. S. 403, wherein it was held, that it was proper, in estimating the value of the land taken, to consider its special adaptability for boom purposes, the author continues: "So it is proper to show that property possesses a peculiar value for railroad purposes, for dock purposes, for mill site

purposes, for a ferry, for market gardening, for raising cranberries, for warehouse purposes or for a bridge site.'' So in the case at bar, it was proper for the jury to take into consideration the peculiar adaptability of the building site for that purpose under all the circumstances. Petitioner's witnesses fixed the value of the improvements at from $450.00 to $600.00. The respondents' witnesses placed it at from $1,200.00 to $1,800.00, most of them fixing it at from $1,500.00. All of the testimony shows that the land taken consisted of meadow land, uncleared pasture land and rough, broken land. The witnesses, as is usual in such cases, varied greatly in their estimation of value. The meadow land was valued at from $20.00 to $50.00 an acre, and some of it as high as $60.00; the pasture land and uncleared hay land at from $15.00 to $25.00, and the rough land at from $1.25 to $10.00. Then there was a variance as to the number of acres of each of the different kinds of land. The jury viewed the premises and were better able to judge of the number of acres in each, as well as other conditions affecting the land. The facts ascertained by the view of the premises are not in the record, whether they were regarded as so much additional evidence, or were used to better understand and apply the evidence adduced at the trial. Keeping in view the evidence relating to the special value of the building site, the value of improvements and of the ground, it will be found that the verdict is within and supported by the values as testified to, and these values, as fixed by the several witnesses, represented to each the market value, as conceded by appellants. The verdict is supported by the evidence of market value and on that ground would have to be sustained if the matter complained of in the instruction had been entirely omitted. If there was error, it was, therefore, without prejudice.

Complaint is also made because the court, in its instructions, confined the jury to the evidence in ascertaining the market value. It is claimed that the court should have instructed the jury that this value was to be found "from a preponderance of the evidence and their view of the premises," and an instruction was tendered containing that idea. In Lewis on Eminent Domain (2nd ed.), § 425, it is said that some courts regard the facts, learned upon a view of the premises, as so much additional evidence, while others hold that the object of the view is to enable the jury to better understand and apply the evidence given at the trial. Now it matters not which of these two effects is given to the view, for in either case the value is to be ascertained from the evidence. If the facts learned by the view is so much additional evidence, then these facts are included in the word "evidence" and the value is to be found from the evidence. If the facts learned upon the view are to enable the jury to better understand and apply the evidence, nevertheless the value is to be found from the evidence. The question raised is not a practical one in this case, for whether it is said the effect of the view is the one or the other of the positions taken by courts, as above indicated, the value is to be ascertained from the evidence, as the trial court instructed.

2. The appellant objects to Instruction No. 2, wherein the term "market value" is defined. Standing alone, this instruction may not conform strictly to each of the numerous decisions on this subject, or to the meaning of the term "market value" in some particular cases under peculiar facts. The instruction says that the market value is such a price as property will sell for in open market for cash, "when there is a demand therefor, and a purchaser or purchasers and a seller or sellers ready and

willing to buy and sell at a well known and generally understood price, and where the purchaser is not obliged to buy and the seller is not obliged to sell." The objection goes to the quoted portion first, because it says that there must be a demand in order to make a market value. Literally, this is true. Before property can be sold, somebody must want it. The mere fact that it is sold to some one indicates there is a demand or want for it. In all of the definitions of market value gathered together in Vol. 5 of "Words and Phrases," it appears that it is to be ascertained from sales that are made from sellers to purchasers. In order to have a purchaser at all some one must want the property, and to that extent there must be a demand or want for it, else it would never be sold. The fact that demands for like property may be infrequent does not establish that there can be a market value for property without a demand or want for it. Market value implies a want or demand. Objection is also made to the words "at a well known and generally understood price," because, as the brief says, there may be a market value when there is not a well known and generally understood price. That may be true in the abstract, but in this case the witnesses and jury seemed to think that they well knew and generally understood the price of land in that vicinity. If there was error in the instruction, it perhaps would have been better, under the authorities, if the reference to a well known and generally understood price had been omitted; but the error, if any, is cured by Instruction No. 8, wherein the price that the jury is to consider is said to be the value, if sold in the open market, under ordinary circumstances, for cash, assuming that the owners are willing to sell, and that the purchasers are willing to buy. Under this instruction, the jury no doubt understood the sense

in which the price was to be well known and generally understood. The brief seems to desire that courts shall reduce this question of market value and its application to the certainty of a mathematical demonstration. Until the human mind is cleared of the many infirmities that enshroud it, this consummation is impossible.

3. In the third subdivision of the brief, complaint is made of the refusal of the court to give the second, third and fifth instructions requested by the appellant. Each of these instructions, when analyzed, is but a different way of expressing what is meant by market value. The court, as has been seen, sufficiently explained this to the jury, and nothing but confusion could result from a multiplication of words.

4. In the fourth subdivision of the brief, the appellant objects to Instruction No. 3. In that instruction, the court told the jury what the true inquiry is in assessing the value of the strip of land taken and the damages to the residue. The instruction does not mention anything about benefits, and that is the reason for the objection. The objection is not at all tenable. Section 2432, Revised Statutes, requires that the verdict shall separately state: first, an accurate description of the land taken; second, the value of the land or property actually taken; third, the damages, if any, to the residue of such land; fourth, the amount and value of the benefits. The third instruction deals only with the second and third items, showing when the requirements of the law are satisfied as to those items. The fourth instruction deals with the fourth item or benefits.

5. Appellant complains because the court refused to give the sixth requested instruction. The brief itself says that appellant's sixth requested in-

struction corresponds, in a general way, with the
court's substitute therefor, which told the jury what
their verdict should state, as required by § 2432,
*supra*. The requested instruction gave to the jury the
right to offset the benefits against the damages when
the two are equal, in which case the verdict would be
silent as to each. This is not the law. Section 2432,
prescribing the form of the verdict, is mandatory.
The damages to the residue of the land and the
benefits must be separately stated in the verdict.
—*P. & A. V. R. R. Co. v. Rudd,* 5 Colo. 270;
*D. & R. G. R. R. Co. v. Stark,* 16 Colo. 291. After
the verdict is in, proper deductions can be made
under section 2431.

The testimony referred to in the brief, to the
effect that the land of the respondents was benefited
by reason of the construction of the railway and
the location of a switch and stockyards thereon, has
been carefully examined. The witnesses stated that
they thought the stockyards would benefit the ranch.
That is all they said. No amount of benefit in dollars
and cents was mentioned. It is impossible to fix
any amount from such testimony. The jury viewed
the premises and found no benefit. There is nothing
definite in this record to show wherein they were
wrong.

6. The respondents filed an answer to the pe-
tition. In this answer, after denials and admissions
of the several allegations of the petition, it was al-
leged, by way of cross-petition, that the lands within
the right of way were worth, on an average, $25.00
per acre, exclusive of improvements, and that they
ascertained this value by inquiry. It was also al-
leged that the respondents were damaged in the sum
of $1,500.00 by reason of the taking of the buildings
and other improvements. The other damages al-
leged in the answer are damages to the residue of

the land. No withdrawal or amendment of these allegations was made or requested, and thus the case was tried. The value of the land and property actually taken, as thus fixed by the respondents, was $2,666.50, and their prayer shows that this is what they asked to be allowed therefor. The verdict fixed the value at $3,089.68 or $423.18 more than the amount fixed by the respondents. The appellant claims that the respondents are bound by the allegations contained in their answer. The respondents have not filed any brief in this case. It would be better for litigants, if their cases are of any interest to them, to appear in this court and endeavor to defend judgments in their favor, and not leave it to the court to grope about in darkness as to their side. Whether an answer is permissive or improper in a proceeding under the eminent domain statute need not be determined. The respondents filed the one in this case. The first part of it consisted of admissions and denials. The second part, containing the allegations as to the value of the property taken, was denominated a further answer and affirmative defense, and was in effect a cross-petition with a prayer plainly asking for the amount fixed by them. They filed it with the intent and for the purpose of such a pleading in an ordinary action, and as they thought, to better enable them to get as large a verdict as they could reasonably expect. They stood ready and willing to receive and accept any benefit or advantage which the answer might afford them and they ought to be held to take whatever disadvantage it might bring. It is true that the value is but a relative matter. It is also true that an owner may underestimate as well as overestimate the value of his property. Here the owners definitely limited the issue of value and asked for the amount so voluntarily limited by them. Why should they be

given more than they fixed and asked for? They ought not be heard to say that the value fixed by them advisedly was not the fair value, when they do not seek to withdraw or amend it. Speaking generally a petitioner, in a case like the present, might conclude that he is willing to pay for the property the amount fixed in the answer of respondents and might come to the hearing wholly unprepared with evidence as to its value, but prepared only with evidence relative to damages and benefits. The petitioner might be willing to concede that the jury might find the value as fixed in the answer. Would it be fair, in such a case, to permit the respondent to repudiate his answer and put in testimony with which he came prepared when the petitioner was not prepared with testimony on account of the answer. The petitioner would, at least, have the right to conclude that no greater value than that fixed in the answer would be attempted to be shown. As said before, the respondents filed this answer for purposes of a pleading by way of cross-petition, asking that a definite amount be allowed in the case, and why should they now be heard to say that what they did was not necessary and that the paper filed by them contained only the expression of an opinion? They treated it as a pleading. They did not withdraw or amend it; but left it in the case. It is certainly not unfair to them to hold them to what they did and prayed. In *Emerson v. Atwater*, 12 Mich. 314, it is said:

"Pleadings would avail little or nothing if parties were not bound by them. They would be worse than useless, if parties were permitted to allege one thing in them and to prove another on the trial or at the hearing. Instead of aiding the court and parties in the subsequent investigation, by narrowing the field of controversy, they would serve as

a lure to mislead and entrap an adversary: That the evidence must be confined to the issue between the parties, is a rule so well settled as to admit of no controversy."

In this view of the matter, the verdict of the jury as to the value of the property taken should be reduced in the sum of $423.18. The judgment of the lower court is, therefore, reversed and the cause remanded with instructions to amend the decree so that the compensation and damages to be paid respondents shall be $423.18 less than fixed in the decree, that is, $3,666.50 instead of $4,089.68, and when so amended, the decree shall, in the respect as amended, and in all other respects as it was originally entered, be the judgment of the court as of the former date thereof, to-wit, August 10, 1906. On the authority of *Land and Canal Co. v. Hartman,* 17 Colo. 138, and §§ 559 *et seq.,* 2 Lewis on Eminent Domain (2nd ed.), it is ordered that the appellant shall not recover any of the costs of this appeal.

*Reversed and remanded with instructions.*

CHIEF JUSTICE CAMPBELL and Mr. JUSTICE WHITE concur.