[No. 3467.]

ROUTT COUNTY DEVELOPMENT CO. v. JOHNSON ET AL.

EMINENT DOMAIN—*Duty and Power of Commissioners.* Commissioners appointed in condemnation proceedings (Rev. Stat., sec. 2420) must substantially conform to the statutes. Their estimate and award of damages must be based entirely upon the sworn testimony and documentary evidence produced before them at the hearing, and such facts as were impressed upon their minds from viewing the premises. They are not at liberty to hold interviews with those not called as witnesses, or examine documents not produced at the hearing. A final order based upon a report and award showing upon its face that it was arrived at in this irregular manner reversed.*

*Appeal from Routt District Court.* HON. JOHN T. SHUMATE, Judge.

*Syllabus by HURLBUT, J.

Mr. C. J. MORLEY, for appellant.

Mr. A. M. GOODING, for appellees.

HURLBUT, J., rendered the opinion of the court.

Petition in condemnation proceedings filed July 17, 1907, by petitioner (appellant) against appellees. Among other things the petition alleges that appellant is a domestic corporation and was organized for certain purposes as defined in its articles of incorporation, to wit:

"To engage in and conduct the business of irrigation and the acquisition, construction, ownership, operation and maintenance of irrigating ditches, canals, laterals, reservoirs, and other property incident and appurtenant thereto, and all rights of way and all location therefor, with view to storing, preserving, and applying water for domestic, agricultural, manufacturing and other purposes, and the reclamation of arid lands and other beneficial uses and purposes, within the state of Colorado."

It is claimed by appellees that the petition did not state facts sufficient to support the decree rendered by the lower court, in this, that it failed to allege that the land sought to be condemned was necessary to further the objects and purposes of the corporation. Appellees have not assigned any cross-errors based upon any ruling of the district court upon the question suggested. This relieves us of the necessity of giving it consideration.

After a careful perusal of the record our attention is first directed to certain paragraphs in the commissioners' report in the Insley case, which may properly be considered under assignments of error numbered 1 and 10. These paragraphs read as follows:

"In order to establish a basis for a just valuation of the property of said defendant Insley, taken or af-

fected by the location of said reservoir, we have not only heard the testimony of witnesses introduced by the parties at the hearing hereinbefore mentioned, but have carefully investigated the prices at which lands are sold in the Snake River district, Routt county, Colorado, and find a wide range of values, according to the character of the soil, location, production, water supply, accessibility to the public range, improvements, and anxiety of the owners to sell.    *    *    *

"A prospectus of this company, issued in 1907, stated that the irrigated lands of the Snake River valley are now held at from fifty to sixty dollars per acre. We find that experienced ranchmen universally consider that on an average ten dollars is a conservative estimate for the expense of clearing, fencing and seeding to meadow one acre of Snake River land.    *    *    *

"We found several Snake River ranches which produced more hay to the acre on the cultivated portions than the Insley ranch, but we found none on which the hay produced will winter so many cattle.    *    *    *

"The three hundred to three hundred and sixty tons of hay produced on this ranch would, on the average ranch, winter from three hundred to four hundred head of cattle, but on account of the location of this ranch it is a well known fact that not only the patented land, but a large portion of the public range in the immediate vicinity, is practically clear of snow nearly the whole year, the range and lands in the immediate vicinity being so situated that the sun and wind clear off the snow more quickly than in other localities. So advantageous are these conditions to stock raising that three hundred tons of hay on this ranch, instead of wintering from three hundred to four hundred head of stock, as on the ordinary ranch, can be safely relied upon to supply the winter's feed of from eight hundred to one thousand head

of cattle, because so much of the time, in the midst of winter, stock find sufficient feed on the patented hill land, and the open range."

. The record fails to disclose any evidence elicited at the hearing or trial which tends to establish any of the facts above stated, and it necessarily follows that such facts (if they are facts) must have been found by the commissioners, not from sworn testimony or proofs, but from their personal interviews with those not called as witnesses, and from inspection of maps, documents and printed matter not produced at the trial. The only evidence which we have been able to discover in the abstract, which bears upon the recitals, is found in the testimony of J. E. Insley, to wit:

"Q. A good deal has been said about your using the Pot Hook valley of your ranch as a winter range. About how much time in the winter are you in the habit of using your ranch and bottom land?

"A. About ninety to one hundred days more or less all winter. I might have told you when you were here about two months ago, when we sat on a bench at the store, that I range the cattle on the bottom land about a month or six weeks during the year, but I run my cattle there all winter. According to the book on range reserves I would be entitled to range a thousand nearly the year round on the reserve. The rules are the same now as they used to be, but I have to pay more, and in the business generally I have the use of the hills and ranges outside of the Pot Hook valley."

Did the commissioners possess the power or authority, under the statute, in fixing values of, and damages to, the land, to take into consideration information or knowledge concerning the same which was acquired entirely aside from a view of the premises, and from sworn testimony and evidence adduced at the trial; and were

they authorized to hold personal interviews with those not called as witnesses, inspect plats, documents, and written matter, not produced at the trial, and use the information so obtained in fixing such values and damages? We think clearly not. No authority has been cited, and we think none can be found, supporting the affirmative, under a statute like the one under which the commissioners were appointed. There is some conflict of authority as to whether the knowledge acquired by commissioners in viewing the property must be applied by them only to a better understanding and explanation of the sworn testimony and proofs disclosed at the trial, or whether the same should be considered as additional evidence to that there adduced. It is not necessary, however, for us to decide that question, as the record conclusively shows that the facts above quoted were neither acquired at the view, nor by any evidence or proofs adduced at the trial.

This is a statutory proceeding, and it is well settled that commissioners, bodies or individuals, appointed and acting thereunder, are limited in their duties and powers to those therein prescribed, and must substantially conform to the statute when assuming to act thereunder. The law under which this proceeding is brought may be found in sec. 2416 and accompanying sections, Revised Statutes, 1908. It prescribes a complete procedure, from beginning to end. By its provisions one desiring to condemn land for reservoir or other purposes must apply to the judge of the district or county court, in term time or vacation, by filing a petition stating certain matters. Upon presentation of the petition, the judge notes a day on which he will hear the same and orders the issuance of summons to each resident defendant, as well as publication thereof when proper showing is made. Liberal amendment to the petition is provided for, and for the

bringing in of new parties when necessary. The court is authorized to hear proofs and allegations of all parties necessary touching the legality of the proceedings, and is commanded to appoint a board of commissioners of not less than three freeholders to ascertain and determine the necessity for taking such lands, and to appraise and determine damages and compensation to be allowed to the owners. The commissioners are required to subscribe an oath, and are empowered to administer oaths to witnesses, to issue subpoenas, compel the attendance of witnesses, and adjourn meetings for that purpose. They are commanded to hear the proofs and allegations of the parties, and, after viewing the premises, without fear, favor or partiality, ascertain and certify the compensation proper to be made to the owners for the lands taken or affected, as well as all damages accruing to owners of property injuriously affected by the taking. The statute also provides that any party to such a proceeding may have the issues tried by a jury by complying with the statute in that behalf, and that the jury may, in the discretion of the court, be sent to view the premises. Forms of verdict or findings of the jury or commissioners are also provided for, as well as other matters of detail touching the proceedings.

It will be noticed that the commissioners are invested with considerable power, but it is specifically provided that the issues of values and damages, submitted to them for determination, shall be found from the "proofs and allegations" of the parties, and after a view of the premises.

Under the most liberal construction of the statute it does not confer upon the commissioners a roving commission to go into the highways and byways in quest of plats, documents and printed matter, or to interview private individuals upon the subject of values and damages,

and from knowledge thus acquired make up their find-
ings. The commissioners in this case were clearly under
a misapprehension as to their powers and duties under
their appointment. · Their findings of values and dam-
ages should have been based solely upon the evidence
produced at the trial, and such facts as were impressed
upon their minds from a view of the premises only. They
were not authorized to discuss with anyone the situation
which a view disclosed, as affecting value or damage, or
resort to plats or other documents not already in evi-
dence, to arrive at their conclusions. Should we uphold
the commissioners as to their method of arriving at the
value of, and damage to, the land in issue as disclosed
by their report, we would be upholding a method which
is in direct opposition to that prescribed by the statute,
namely, that such values are to be found from the proofs
and allegations of the parties and a view of the premises.
At the trial both parties are entitled to be present, and
each is entitled to cross-examine witnesses and object to
the admission or exclusion of any and all documents of-
fered in evidence. If the information acquired by the
commissioners from documents and persons not produced
at the trial should be used by them, then the party in-
juriously affected thereby would be deprived of the right
of inspecting such documents and cross-examining such
witnesses.

The following cited authorities are, to some extent,
in point, and show careful consideration of the subject,
viz.: *Washburn et al. v. M. & L. W. R. Co.*, 59 Wis., 364;
*Close et al. v. Samm et al.*, 27 Iowa, 503; *Zanesville M.
& P. R. Co. v. Bolen et al.*, 76 Ohio St., 376; *Denver N.
& P. R. Co. v. Howe et al.*, 49 Colo., 256; *Flower v. Balti-
more, etc., Co.*, 132 Pa. St., 524.

In the last cited case the court says:

"You have seen the land, but you are not to take it
for granted that you can, because you have seen it, be

witnesses, or render a verdict upon your own judgment from that view. The law does not permit that. You are only permitted to view the land, that you may the better understand the testimony. The value of the land you are to ascertain from the witnesses.''

The Insley case and that concerning the lands of Horace V. Rowell appear to be consolidated for the purpose of appeal. In the commissioners' report in the latter case we find the following statement, viz.:

''In January, 1908, we wrote the attorney representing the plaintiffs and defendant in above case that if they would set a day for a final hearing of the case of defendant Rowell, we would be pleased to meet their convenience. Receiving no reply, we proceeded to appraise the property on basis of the information elicited in the hearing of Nov. 2d, 1907, *and our own investigations.*'' (Italics ours.)

It is obvious from this excerpt that the same method of arriving at the values and damages was adopted by the commissioners in both cases. Therefore both decrees will be reversed, and the causes remanded.

*Reversed and Remanded.*